Brian NELSON, Petitioner,

v.

Catherine FERREY, Respondent.

No. 88–C–35.

United States District Court,
E.D. Wisconsin.

June 10, 1988.

DECISION AND ORDER

CURRAN, District Judge.

Brian Nelson, the petitioner in the above-captioned action, is a prisoner in state custody who is seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a trial by jury in the Racine County [Wisconsin] Circuit Court, Nelson was convicted of one count of first degree sexual assault in violation of section 940.225(1)(d) of the Wisconsin Statutes.[1] He is currently serving a five year sentence at the Oakhill Correctional Institute where he is in the custody of respondent Catherine Ferrey. This court, which is located in the district where Nelson was convicted, is empowered to consider the petition under 28 U.S.C. § 2241(d).

## I. STATE PROCEEDINGS

Following the denial of his posttrial motions in state court, Nelson challenged his conviction in the Wisconsin Court of Appeals which affirmed the trial court in an unpublished decision. *See State v. Nelson,* 131 Wis.2d 591, 393 N.W.2d 798 (Ct.App. 1986), *aff'd,* 138 Wis.2d 418, 406 N.W.2d 385 (1987). The Wisconsin Supreme Court then granted review and confirmed the conviction in a 4–3 decision. *See State v. Nelson,* 138 Wis.2d 418, 406 N.W.2d 385 (1987). Wisconsin's Supreme Court recounted the following facts leading up to Nelson's conviction and sentencing:

"In April of 1984 the defendant, Brian Nelson, was charged with one count of intentionally and feloniously having sexual contact with a person twelve years or younger. The alleged victim of the sexual assault was his daughter, T.N., who was born June 7, 1980. At trial the state presented no eyewitness testimony and did not call T.N. to testify. Instead, the evidence of sexual assault and the evidence linking Brian Nelson to the sexual assault were presented primarily through the testimony of T.N.'s mother, Susan Nelson,

Michael Fitzgerald, Racine, Wis., for petitioner.

Wisconsin Atty. Gen., Madison, Wis., for respondent.

---

**1.** Section 940.225(1)(d) of the Wisconsin Statutes provides that:

    **Sexual assault.** (1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

    . . . .

    (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

T.N.'s treating psychologist, Dr. McLean, and a second psychologist, Dr. Silberglitt.

In April of 1982, Brian and Susan Nelson were divorced. Susan Nelson was granted custody of their daughter, T.N., and the defendant was granted reasonable visitation rights. Shortly after the divorce was finalized, Mitchell Blada moved in with Susan Nelson and T.N. Susan Nelson testified at trial that beginning in August, 1983, T.N. became apprehensive and at times hysterical when the defendant came to pick her up for visitation. According to Susan Nelson, after a visit with the defendant in early August, 1983, T.N. begged not to return to her father's residence. Susan Nelson testified that by October, when she would inform T.N. that T.N. was going to her father's house, T.N. would go 'berserk.' She would cry and scream, and beg not to go. At this point visitations essentially stopped.

"At Christmas, visitation was resumed without incident. However, Susan Nelson testified that shortly thereafter T.N. attempted to pull her mother's pants down while playing a game of tag. According to Susan Nelson, T.N. indicated that daddy had taught her to play tag in this manner. Susan Nelson also testified that on January 20, 1984, T.N. insisted that a picture of Michael Jackson be brought into the bathroom to watch her. T.N. pointed at her vagina and said that Michael Jackson doesn't look like this and 'daddy doesn't look like this either.' Susan Nelson testified that, when she asked T.N. how she knew this, T.N. responded, 'I pulled his underpants down.' When Susan Nelson told T.N. that it must have been an accident, T.N. insisted that daddy told her to pull down his underpants and that it was alright because Cheryl, the defendant's second wife, was not at home.

"Susan Nelson became suspicious of possible sexual abuse and contacted Dr. McLean to discuss whether there was a possibility of sexual abuse. Susan had previously been given Dr. McLean's name when she called the court to find out if she 'had to force' T.N. to visit the defendant.

"Dr. Donald McLean, a clinical psychologist, was called by the state and was qualified by the court as an expert witness in the field of psychology. Dr. McLean's notes had been provided to the defense prior to trial. Defense counsel, outside the presence of the jury, objected on hearsay grounds to Dr. McLean's anticipated testimony concerning statements made by T.N. In explaining the objection, defense counsel stated: 'Now, the basic problem with this, as I see it, is that there is a witness then to whom we are denied a right of confrontation.' The trial court ruled that the statements made by T.N. were admissible under sec. 907.03, Stats.,[2] since they formed the basis of an expert opinion. The trial court did not rule on the confrontation issue, and defense counsel did not repeat the objection.

"Dr. McLean testified to a series of fifty-nine evaluation and treatment sessions with T.N. from January 25, 1984, to September 11, 1984. The treatment sessions were generally conducted in Dr. McLean's play therapy room, although Dr. McLean occasionally spoke with T.N. in his regular office. The play therapy room was set up with games, puzzles, coloring books, dolls, and other toys which allow a child to express oneself through play.

"Dr. McLean testified that T.N. had revealed at a number of sessions that she had touched daddy where he went to the bathroom. According to Dr. McLean, he placed anatomically correct male and female dolls in the play therapy room on February 27, 1984. Dr. McLean testified that at the February 28 session, T.N. placed the female doll's face against the genital area of the male doll and said, 'she gets mud on her face.' Upon being asked what she meant, T.N. replied, 'its white and sticky.' Dr. McLean testified that in a subsequent

2. Section 907.03 Stats., provides: "Bases of opinion testimony by experts. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

session T.N. told him that her father warned her not to talk about the incident and also told her to say that Susan's boyfriend, Mitch, did it.

"Dr. McLean related the following conversation with T.N. 'Do you pull someone's underpants down and touch him where he goes to the bathroom, and the child said yes ... and I said, well who is it that you touch where he goes to the bathroom, and the child answered Mitch. And I said you told me it was Daddy. Was it Mitch or Daddy, and the child said Daddy. And I said then why did you say Mitch, and she said it was Mitch, and I said then it was not Daddy. She said it was Daddy, then Mitch, then Daddy, and she answered with he told me to say it was Mitch. I said who told you to say it was Mitch. She said Daddy.' Dr. McLean further testified that, when he asked T.N. if she would only tell the truth to anyone who talks to her, she responded, 'I don't have to tell the truth.'

"Dr. McLean also testified that throughout the treatment T.N. was extremely anxious and reluctant to talk about the incident and that at times T.N. would appear depressed and emotionally drained.

"Dr. Burton Silberglitt, a clinical psychologist, was also called by the state as an expert witness. The defense raised no objection to this testimony which was based on one session conducted on March 27, 1984. Dr. Silberglitt testified that T.N. tried to ignore discussing her father because it was 'discomforting to her and frightening to her and traumatic to her to get into this.' According to Dr. Silberglitt, when he brought up T.N.'s father, the child stated that she 'played with his thing that he put in the toilet.' Dr. Silberglitt further testified that T.N. was very agitated and that it was his recommendation that T.N. engage in therapy with a qualified therapist.

"Mary Anne Jensen, a social worker for Racine County, was also called to testify. She testified that on January 29, 1984, T.N. drew a picture which depicted herself and her father. The pictures were marked as exhibits and shown to the jury. Mary Anne Jensen offered no explanation of the

drawing's significance. However, in the opening statement to the jury, the state told the jury that the picture drawn by T.N. depicted the defendant as an erect penis. The defense raised no objection to this statement.

"At the close of the state's case, the defense made a motion to dismiss, and argued, first, that the hearsay statements of T.N. as related by the psychologists were inadmissible because no expert opinion had been offered and, second, that defendant's right of confrontation had been violated because the state had not shown that T.N. was unavailable as a witness. The state responded that the testimony of two psychologists demonstrated that T.N. had suffered a severe trauma because of her sexual experiences with her father, that the trauma had not been cured, and that T.N. was 'effectively unavailable' to testify at trial. Defense counsel also argued that the defendant's right to confrontation had been violated because the state did not suggest or consider the possibility of videotaping the child in her home, the psychologist's play room, or in some other noncourtroom setting.

"The trial court, in denying the motion to dismiss, ruled that the testimony of Dr. McLean as to what T.N. said during the therapy sessions was admissible hearsay. The trial court also ruled that the testimony made it patently clear that T.N. could not have testified due to her age and the potential trauma. Based on the testimony at trial, the court stated: 'I don't think the child would have been available in any sense for what we would determine to be examination or appearance in court or even by videotape or any other electronic means.'

"The defense then presented its case, including the testimony of two psychologists, Dr. David Nichols and Dr. Walter McDonald. Dr. Nichols testified that at the defendant's request he interviewed T.N. on March 16, 1984. Although Dr. Nichols testified that the interview revealed very little concerning the facts of the alleged sexual assault, Dr. Nichols later testified that T.N. told him that she did

not like to visit her father and that she gets white mud on her face. According to Dr. Nichols, T.N. repeatedly either denied sexual contact or stated that she did not want to talk about it. Dr. Nichols concluded that some sexual abuse had occurred and testified that he had made a recommendation to the court that there should be no further visits with the defendant.

"Dr. McDonald testified that he had examined the clinical notes of Dr. McLean concerning the treatment of T.N. to determine if there was an alternative explanation for T.N.'s behavior in therapy. According to Dr. McDonald, T.N.'s increased sexual preoccupation throughout the therapy may be explained by her continual and repeated exposure to the anatomically correct dolls. Dr. McDonald further testified that his explanation was not necessarily more valid than that explanation which equally well fit the facts as they were presented to him.

"On September 21, 1984, the defendant was found guilty of first-degree sexual assault. A judgment of conviction was entered, and the defendant was sentenced to five years in the Wisconsin State Prison." Id. at 422–28, 406 N.W.2d at 386–89.

The state supreme court then outlined the posttrial proceedings in the trial court and in the court of appeals:

"On January 28, 1985, the defendant filed postconviction motions requesting that the verdict be set aside and a new trial ordered. The motions alleged numerous errors, including that the court erred in admitting into evidence the hearsay statements of T.N. through the testimony of Dr. McLean and Dr. Silberglitt and that the use of such evidence denied him his right of confrontation under the sixth and fourteenth amendments of the United States Constitution and Article I, sec. 7 of the Wisconsin Constitution. On March 6, 1985, the trial court heard oral argument on these motions and expressed concern that the defendant's right to confront his accuser had been violated at trial by the court's failure to make a ruling about the unavailability of T.N. No ruling was made, but another hearing was set.

"In response to the trial court's comments, the state moved to supplement the record by means of an evidentiary hearing to establish that, at the time of trial, T.N. was an unavailable witness. The defendant objected to this procedure, the issue was briefed, and on April 18, 1985, the trial court granted the state's motion.

"The only witness at the hearing was Dr. McLean who was called to testify by the state. He testified that T.N. would not have responded to direct questioning about the alleged sexual abuse and that such questioning could have traumatized her. In addition, Dr. McLean testified that T.N. was very fearful of her father and that the presence of her father would have a very negative effect on her. Dr. McLean agreed that a videotape could have been made of the therapy sessions, but noted that a large number of sessions would have had to be taped because T.N. volunteered information only gradually throughout the course of therapy. The defendant elected not to present testimony from his own psychological experts who had testified at trial. According to the defendant, the lapse of time between the trial and the hearing denied him the ability to present any meaningful evidence. The trial court concluded that, because of the likelihood of trauma and the age of T.N., T.N. was unavailable to testify at trial.

"The court of appeals, in a per curiam opinion, affirmed the judgment of the trial court. According to the court of appeals, the testimony of Dr. McLean was properly admitted under sec. 908.03(4), Stats.—statements made for the purpose of medical diagnosis or treatment. The court further concluded that T.N. was unavailable to testify and that the statements of the experts were reliable, thus satisfying the two-pronged confrontation clause analysis outlined in Ohio v. Roberts, 448 U.S. 56, 65–66 [100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597] (1980), and State v. Bauer, 109 Wis.2d 204, 210–11, 325 N.W.2d 857 (1982)." Id. at 428–29, 406 N.W.2d at 389.

In seeking review by the Wisconsin Supreme Court, Nelson raised three issues:

1. Did the trial court err in admitting the out-of-court statements of the alleged victim to two psychologists, Dr. McLean and Dr. Silberglitt?

2. If the out-of-court statements were properly admitted as exceptions to the hearsay rule, did the admittance of these statements violate the defendant's right of confrontation under the United States and Wisconsin Constitutions?

3. Did the trial court err in admitting into evidence drawings made by the alleged victim after the prosecutor in the opening statement told the jury that the drawings depicted the defendant as an erect penis?

The Wisconsin Supreme Court granted Nelson's petition for review and a divided (4–3) Court held that the out-of-court statements were properly admissible as exceptions to the hearsay rule under section 908.03(4) of the Wisconsin Statutes—statements made for the purposes of medical diagnosis or treatment;[3] that there was no violation of the confrontation clause of the State or federal constitution; and, that the admittance into evidence of the drawings constituted harmless error. *Id.* at 422, 406 N.W. 2d at 386.

## II. COLLATERAL REVIEW

### A. *Scope of Review*

After his state court remedies proved unavailing, Nelson filed his petition for a writ of habeas corpus in this court. The sole issue raised by his petition is whether he was denied his Sixth Amendment right to confront T.N., the alleged victim, at trial. The respondent concedes that Nelson has exhausted his state court remedies as to this issue, *see* Response to Petition for a Writ of Habeas Corpus at ¶ 3; and, based on the record of the state proceedings, the court finds that the petitioner has met his burden of demonstrating that he has met the prerequisites for relief, including fairly presenting the substance of his federal claim to the state courts. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

The ultimate determination of whether the admission of the hearsay statements violated Nelson's Sixth Amendment right to confrontation is a question of law which involves the application of legal principles to historical facts.[4] *See Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1055 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *United States ex rel. Scarpelli v. George,* 687 F.2d 1012, 1015 (7th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). In habeas corpus proceedings federal courts must accord a presumption of correctness to state court findings of basic, primary or historical facts and to subsidiary facts underlying ultimate conclusions, provided that the conditions of 28 U.S.C. § 2254(d)[5] are met.

---

**3.** Section 908.03(4) of the Wisconsin Statutes provides that:

> **Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

**4.** The respondent has provided a transcript of the state proceedings which this court has reviewed and the parties have not argued that any of the historical facts are in dispute or that the petitioner did not receive a full and fair evidentiary hearing in state court, so there was no necessity for this court to hold an evidentiary hearing. *See Montgomery v. Petersen,* 846 F.2d 407, 408 n. 1 (7th Cir.1988).

**5.** 28 U.S.C. § 2254(d) provides that:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

*See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982); *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755–56 n. 6, 9 L.Ed.2d 770 (1963); *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1019 (7th Cir.1987). This rule applies equally to findings of trial courts and appellate courts. *See Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981) (per curiam). It applies as well to the inferences that can be deduced from the facts. *See Marshall v. Lonberger,* 459 U.S. 422, 435, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). However, the legal conclusions drawn by state courts from the historical facts on the federal constitutional question raised are subject to independent review. *See Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). In the same fashion, mixed questions of law and fact are subject to independent federal review. *See United States ex rel. Savory,* 832 F.2d at 1018; *Nash v. Israel,* 707 F.2d 298, 301 (7th Cir.1983). Where the question is mixed, the federal court may give a different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard. *See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1981).

When, as here, the issue involves a federal constitutional right, federal law must be applied. *See Boykin v. Alabama,* 395 U.S.

238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Federal habeas review can cover only violations of the Constitution, laws or treaties of the United States. *See Shillcutt v. Gagnon,* 827 F.2d 1155, 1158 (7th Cir.1987). This court cannot entertain an argument urging that Wisconsin courts merely misconstrued state rules of evidence. *Id.*

**B.  *Supreme Court Treatment of the Confrontation Right***

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions the accused shall enjoy the right "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). If literally applied, the Confrontation Clause would abrogate virtually every hearsay exception, but courts have long rejected this approach as unintended and too extreme. *See, e.g., Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). Consequently, there has been a continuing struggle to define the relationship between the Confrontation Clause and the hearsay rule with its many exceptions. Because the interpretation of this relationship and the questions left unanswered by recent decisions are central to the issues raised in this

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, perti-

nent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

case, a brief review of Confrontation Clause law is in order.

Little is known about the Framers' intent in providing the Confrontation Clause. *See, e.g.,* Read, *New Confrontation— Hearsay Dilemma,* 45 S.Cal.L.Rev. 1, 6 (1972) ("The exact intent of the framers of the Constitution in providing [the confrontation clause] is probably undiscoverable."). However, it is generally agreed that the particular vice that gave impetus to the Confrontation Clause was the practice of trying a defendant on "evidence" which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact. *See California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). Accordingly, in an early line of cases involving the admission of former testimony, the Supreme Court's decisions turned on whether there had been an opportunity for cross-examination prior to or during trial. *See, e.g., Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1878).

Then, in *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), in reversing the denial of a writ of habeas corpus for a defendant convicted of armed robbery, the Court concluded that the right to confrontation is "basically a trial right" which "includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Id.* at 725, 88 S.Ct. at 1322. The principal evidence against the petitioner had consisted of the reading of a transcript of the preliminary hearing testimony of a witness who, by the time of trial, was incarcerated in a federal prison in Texas. *See Id.* at 720, 88 S.Ct. at 1319. Even though the petitioner had had an unexercised opportunity to cross-examine the witness at the preliminary hearing, the Court held that the defendant's confrontation right had been violated by admitting this testimony because the prosecution had made no effort to produce the declarant at trial to be cross examined and to give the jury an opportuni-

ty to weigh his demeanor. *See Id.* at 724–26, 88 S.Ct. at 1321–22. The Court explained that:

> [W]e would reach the same result on the facts of this case had petitioner's counsel actually cross-examined Woods [the incarcerated witness] at the preliminary hearing ... A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case.

*Id.* at 725–26, 88 S.Ct. at 1322 (footnote and citation omitted). Rejecting the state's argument that the witness' mere absence from the jurisdiction was a sufficient ground to dispense with confrontation, the Court emphasized that: "[A] witness is not 'unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial." *Id.* at 724–25, 88 S.Ct. at 1321–22.

In the 1970 case of *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the prosecution offered evidence of exculpatory statements that a prosecution witness made to a police officer prior to trial. *See Id.* at 151, 90 S.Ct. at 1931. The Court held that these hearsay statements could not be received in evidence unless the witness was able to be cross-examined regarding them at trial. *See Id.* at 164, 90 S.Ct. at 1938. In explaining its reasoning, the Court enumerated the underlying purposes of the Confrontation Clause, pointing out that confrontation:

> (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces

the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* at 158, 90 S.Ct. at 1935 (footnote omitted).

Later in that same year the Court shifted the emphasis from face-to-face confrontation to practicality and truth-finding, saying:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."

*Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970) (plurality) (quoting *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970)). *See also Tennessee v. Street,* 471 U.S. 409, 415, 105 S.Ct. 2078, 2082, 85 L.Ed. 2d 425 (1985). In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), a witness had testified to a brief conversation about the defendant Evans that the witness had had with a fellow prisoner in the Atlanta Penitentiary. The Court found no confrontation violation in the admission of this hearsay even though the declarant was not cross-examined and the prosecution made no showing that he was unavailable. *See Id.* at 87–89, 91 S.Ct. at 219. The Court reasoned that this hearsay testimony could be admitted because it was of "peripheral significance" and was neither "crucial" to the prosecution nor "devastating" to the defendant. *Id.* at 87, 91 S.Ct. at 219.

Ten years later in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court ruled that the admission of preliminary hearing testimony is constitutionally permissible only if the proponent establishes that: (1) the declarant is unavailable, and (2) the statement contains sufficient indicia of reliability to ensure accuracy in the factfinding process. *See Id.* at 65–75, 100 S.Ct. at 2538–44. Although *Roberts* dealt with prior testimony, lower courts began to apply both prongs of the *Roberts* test to all types of hearsay. For instance, in the *Nelson* case the Wisconsin courts used the *Roberts* test to determine whether the admission of testimony under the hearsay exception for "statements for purposes of medical diagnosis or treatment" contravened Nelson's Sixth Amendment confrontation right.

Then, in 1986, the United States Supreme Court issued its opinion in *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), in which it may have sharply curtailed the necessity of meeting *Roberts'* unavailability requirement. In *Inadi,* the prosecutor offered the out-of-court declarations (taped conversations) of an unindicted co-conspirator who failed to appear at trial—allegedly due to car trouble. *Id.* at 390, 106 S.Ct. at 1124. The trial court admitted the statements under Federal Rule of Evidence 801(d)(2)(E). In affirming this ruling (and reversing the Third Circuit), the Supreme Court declined to require a showing of a declarant's unavailability as a prerequisite to the admission of co-conspirator statements. *Id.* at 400, 106 S.Ct. at 1129. Cautioning that *"Roberts* should not be read as an abstract answer to questions not presented in that case," *Id.* at 392, 106 S.Ct. at 1125, the Court explained that:

> *Roberts* must be read consistently with the question it answered, the authority it cited, and its own facts.... *Roberts* simply reaffirmed a longstanding rule.... that applies unavailability analysis to prior testimony.... *Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable.

*Id.* at 394, 106 S.Ct. at 1126. The Court explained that, in some situations, the truth-determining function of the Confrontation Clause can sometimes be better served without a personal examination of a declarant in front of the jury. The Court

believed that, because co-conspirator statements "are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated even if the declarant testifies to the same matter in court." *Id.* at 395, 106 S.Ct. at 1126. By limiting *Roberts* to cases involving prior testimony sought to be admitted under Federal Rule of Evidence 804 (or an equivalent state evidentiary rule),[6] the Court implied that a showing that a witness is unavailable is not required by the Confrontation Clause for admitting any hearsay other than prior testimony. A defendant would have to look to the law of evidence to find a requirement that a non-testifying declarant be found unavailable. Evidence law already demands that Rule 804 declarants be unavailable before hearsay is admitted, but Rule 803 allows the admission of hearsay whether or not the declarant is available.[7]

The language of the *Inadi* opinion cast doubt on the general application of the Roberts unavailability prong to hearsay other than prior testimony. *See Inadi,* 475 U.S. at 394, 106 S.Ct. at 1126. Subsequently, however, in *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Court held that a co-defendant's hearsay confession inculpating a defendant was inadmissible under the Confrontation Clause because it was unreliable. Before analyz-

ing the reliability of the co-defendant's confession, both the majority and the dissent in *Lee* assumed that the unavailability prong of *Roberts* had to be satisfied. *Id.* at 539 & 549 n. 2, 106 S.Ct. at 2061 & 2067 n. 2 (Blackmun, J., dissenting). The four dissenting justices recommended that the necessity for an unavailability finding should be determined on a case-by-case or rule-by-rule basis.[8]

In the wake of the uncertainty left by the *Inadi* decision and the lack of further interpretation in subsequent Supreme Court cases, the other federal courts have not rushed to jettison the unavailability requirement. Some courts have managed to avoid the issue by finding other grounds for making a confrontation decision. *See, e.g., United States v. Vretta,* 790 F.2d 651 (7th Cir.) (impact of *Inadi* need not be decided because the declarant of the hearsay detailing prior threats was the deceased victim and was obviously unavailable)[9], *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986). Other courts have proceeded to rule on unavailability—just in case the requirement still applies. *See, e.g., United States v. Bernard S.,* 795 F.2d 749 (9th Cir.1986).

Courts have been willing to dispense with the unavailability requirement or to rule that the lack of an unavailability find-

---

6. In *Roberts,* the prior testimony was admitted by the state trial court pursuant to section 2945.-49 of the Ohio Revised Code Annotated. This statute is equivalent to Federal Rule of Evidence 804(b)(1).

7. The co-conspirator statements at issue in *Inadi* did not fall under either Rule 803 or 804. They were admitted pursuant to Rule 801(d)(2)(E) and, as such, are defined as "not hearsay." Nevertheless, some circuits had held that, under *Roberts,* unavailability of the declarant had to be shown. *See, e.g., United States v. Inadi,* 748 F.2d 812, 819 (3d Cir.1984), *rev'd,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Other circuits had ruled that compliance with Rule 801(d)(2)(E) automatically satisfies the Confrontation Clause. *See, e.g., United States v. Molt,* 772 F.2d 366, 368 (7th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986). This split in the circuits was resolved by *Inadi.*

8. Justice Blackmun, writing for the four dissenting justices, noted that:

As this Court recently explained in *United States v. Inadi,* [475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)], a specific showing of unavailability is not always required. I nonetheless assume, for purposes of discussion, that in relevant respects Thomas' custodial confession is more like the prior judicial testimony at issue in *Roberts* than like the contemporaneous co-conspirator statements involved in *Inadi,* and thus both *Roberts* requirements had to be satisfied.

*Lee v. Illinois,* 476 U.S. 530, 549 n. 2, 106 S.Ct. 2056, 2067 n. 2, 90 L.Ed.2d 514 (Blackmun, J., dissenting).

9. *See also United States v. Wilmer,* 799 F.2d 495, 501 (9th Cir.1986) ("We need not decide whether unavailability must be shown before evidence is admissible under the public records exception to the hearsay rule because confrontation clause violations are subject to harmless error analysis."), *cert. denied,* — U.S. ——, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987).

ing is harmless error in cases where: (1) the hearsay is offered under a business record exception; or (2) the hearsay testimony is neither crucial to the prosecution nor devastating to the defendant; or (3) any utility in confronting the declarant would be remote. *See, e.g., Bernard S.,* 795 F.2d at 756 (assuming that the unavailability analysis of *Roberts* applies, the admission of medical records without a finding that the doctor who entered the information on the records was unavailable was harmless because the evidence was of peripheral significance to the case).[10]

At least one appellate court has adopted the *Inadi* Court's suggestion that a defendant can obviate a confrontation problem by exercising his rights under the Compulsory Process Clause to call an absent declarant as his own witness. *See Inadi,* 475 U.S. at 397, 106 S.Ct. at 1127. In *Reardon v. Manson,* 806 F.2d 39 (2d Cir.1986), *cert. denied sub nom. Reardon v. Lopes,* —— U.S. ——, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987), the court admitted a toxicologist's expert testimony concerning laboratory tests without requiring a showing that the assistant chemists who helped perform the tests were unavailable. The court reasoned that:

> [A]t least in those borderline cases where the likely utility of producing the witness is remote, the Sixth Amendment's guarantee of an opportunity for effective cross-examination is satisfied where the defendant himself had the opportunity to call the declarant as a witness.

*Id.* at 42.

### C. *Nelson's Confrontation Right*

This uncertainty over the continuing viability of the *Roberts* test impacts on Nelson's petition for habeas corpus, because

the central issue the petitioner raises is whether his confrontation rights were violated by the admission of the out-of-court statements of the alleged victim, T.N., who did not testify at trial. As explained above, the state courts used both prongs of the *Roberts* test to assess whether admitting T.N.'s statements under a hearsay exception violated Nelson's Sixth Amendment Rights.[11] *See State v. Nelson,* [131 Wis.2d 591, 393 N.W.2d 798 (table)] No. 85–1125–CR, slip op. at 3 (Wis.Ct.App. April 23, 1986), *aff'd,* 138 Wis.2d 418, 437–46, 406 N.W.2d 385, 393–396 (1987).

### 1. Hearsay Exception

When faced with an objection to the admission of out-of-court statements, a court's first task is to determine whether the statements are hearsay and, if so, whether they are nevertheless admissible as an exception to the rule against hearsay. At Nelson's trial the state called as its witness Dr. Donald McLean, a clinical psychologist who was qualified by the court as an expert in the field of psychology. *See* Brief of Respondent at Appendix R. 20, p. 12. Aware that Dr. McLean would attempt to testify to statements made to him by T.N., Nelson's counsel interposed hearsay and confrontation objections. *Id.* at pp. 14–15. The court overruled the objections and admitted T.N.'s statements to Dr. McLean under section 907.03 of the Wisconsin Statutes, which provides that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the

---

**10.** *See also United States v. Keplinger,* 776 F.2d 678, 696 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). In *Keplinger* (a pre-*Inadi* decision), the Seventh Circuit ruled that the admission of a memorandum under the business records exception to the hearsay rule did not violate the Confrontation Clause. The court reasoned that: "Even though the government did not demonstrate the unavailability of the hearsay declarant, Gerald Kennedy, admission of the memo did not violate the confrontation clause if it was not 'cru-

cial' to the government or 'devastating' to the defense, and if the utility of cross-examination was remote." *Id.* at 696, quoting *Dutton v. Evans,* 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed. 2d 213 (1970) (plurality).

**11.** Even though the *Inadi* decision was issued before the Wisconsin Supreme Court issued its ruling in the *Nelson* case, the *Inadi* case was not discussed in that court's opinion.

subject, the facts or data need not be admissible in evidence.

Wis.Stat. § 907.03. The Wisconsin Court of Appeals agreed with the result, but not the basis for this ruling. *See State v. Nelson,* [131 Wis.2d 591, 393 N.W.2d 798 (table)] No. 85–1125–CR, slip op. at 2–3 (Wis.Ct.App. April 23, 1986), *aff'd,* 138 Wis. 2d 418, 406 N.W.2d 385 (1987). The appellate court held that the hearsay statements could more properly have been admitted under section 908.03(4) of the Wisconsin Statutes, which provides that:

> The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) **STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Wis.Stat. § 908.03(4).

The Wisconsin Supreme Court affirmed that the hearsay testimony of Dr. McLean was admissible under the section 908.03(4) exception. *See State v. Nelson,* 138 Wis.2d 418, 431–35, 406 N.W.2d 385, 390 (1987). In arriving at this conclusion the court considered a number of factors:

> In the present case a number of factors support a finding that T.N. was aware that her statements were being used as a basis for medical diagnosis or treatment. T.N.'s sessions with Dr. Mc-Lean, although mainly conducted in a play therapy room, were scheduled and conducted in a manner consistent with the provision of diagnosis and treatment. Dr. McLean had a waiting room in which T.N. and her mother would await their regularly scheduled appointments. T.N. was aware that she saw Dr. McLean on an appointment basis and that he was

not her peer. Very early in the treatment, Dr. McLean made it clear to T.N. that he was an authority figure, not a playmate. T.N. began her treatment with Dr. McLean by undergoing a series of tests and evaluations. Although most of the sessions were conducted in a play therapy room, T.N. would occasionally sit and speak with Dr. McLean in his formal office. T.N. was described as a very intelligent child. We conclude that T.N. was aware that she was being observed, with a goal towards treatment.

> Furthermore, there is nothing in the record to indicate that T.N.'s motive in making the statements to Dr. McLean and Dr. Silberglitt was other than as a patient seeking treatment. It is always difficult for a court to determine whether a very young child completely understands the context in which information is sought from that child. However, we do not believe that, because a child is only three or four years of age at the time he or she goes to a doctor, the child is unable to comprehend that the child is involved in the process of receiving diagnosis or treatment. A child is no less aware of the existence of emotional or mental pain than physical pain and, thus, is equally aware of the necessity and beneficial nature of therapy.

*Id.* at 431–32, 406 N.W.2d at 390–91. Although the court recognized that the child was merely four years of age, it concluded "that such a child also understands that statements made to a psychologist will be used by the psychologist to ease the emotional or psychological injuries of the child." *Id.* at 432, 406 N.W.2d at 391. Finally, the court held that, while the general rule is that statements as to who was at fault are ordinarily inadmissible under the exception for statements made for purposes of diagnosis or treatment, the treatment of a child abuse victim often depends upon uncovering the identity of the abuser and separating the assailant from the victim.[12] Based on this reasoning, the court

---

12. In general, statements of fault are not included under the hearsay exception for statements for the purpose of medical diagnosis or treat- ment. *See United States v. Pollard,* 790 F.2d 1309, 1313–14 (7th Cir.1986), *overruled on other grounds, United States v. Sblendorio,* 830 F.2d

concluded "that T.N.'s identification of the defendant as the assailant was a necessary element for those charged with determining appropriate diagnosis or treatment. Accordingly we hold that Dr. McLean's testimony as to the hearsay statements made by T.N. was properly admitted into evidence." *Id.* at 434, 406 N.W.2d at 391–92.

This evidentiary ruling would be reviewable by this court only for an abuse of discretion which resulted in a denial of the fundamental fairness of the trial proceedings guaranteed by the Due Process Clause of the Fourteenth Amendment. *See Woodruff v. Lane,* 818 F.2d 1369, 1373 (7th Cir.1987); *Dres v. Campoy,* 784 F.2d 996, 998 (9th Cir.1986). The petitioner has raised no due process challenge in his habeas corpus action, so this court need only review the question of whether admitting T.N.'s statements violated constitutional Confrontation Clause standards.

### 2. Unavailability

■ At trial, when Nelson's counsel made a Confrontation Clause objection to admitting T.N.'s statements through Dr. McLean's testimony, the prosecution made no contemporaneous attempt to show that T.N. was unavailable, nor did the trial judge immediately address the constitutional objection. When the objection was renewed in connection with the defendant's motion to dismiss at the close of the state's case, the court found that the child was not "available in any sense for what we would determine to be examination or appearance in court or even by videotape or any other electronic means." Brief of Respondent at Appendix R.21, p. 28. Ruling that the testimony was relevant, properly admitted and not unfairly prejudicial, the court denied the motion. *Id.* at p. 29.

In his postconviction motions the defendant again raised the confrontation issue. The court, dissatisfied with its midtrial ruling because Nelson had not been given an opportunity to rebut the state's evidence that T.N. was unavailable, scheduled a hearing on the confrontation issue. Despite the defendant's objection that conducting an unavailability hearing some eight months after trial was not "meaningful," the court proceeded to hear the testimony of the sole witness, Dr. McLean. At the conclusion of this hearing, the court, emphasizing that the child was merely four years old, ruled that:

I don't think that, and as the doctor's [sic] testified to, I don't believe that there could ever have been in any way any meaningful testimony appropriated from the stand. In fact, I think it's quite obvious that she chose not to say anything. Therefore, I do find both, on those basis—First, I don't believe that she would have testified. She's unavailable on that basis. Secondly, that the trauma that it would cause her. I don't think we're in the midst of trying cases, [to inflict] injury on victims of crimes especially victims who are three or four years old. Then they'd have to compound the injurys that's already been done to them by the action compounded by making them come into court and testify. I do declare that the child was unavailable.

Brief of Respondent at Appendix R.26, p. 27–28.

---

1382 (7th Cir.1987). However, in cases of child abuse, some courts have made an exception when the alleged abuser is a member of the victim's household on the theory that identification of the perpetrator is relevant to the treatment and to the prevention of recurrence of the injury. *See United States v. Renville,* 779 F.2d 430, 435–39 (8th Cir.1985) ("We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of Rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a

member of the victim's immediate household *are* reasonably pertinent to treatment."). When the alleged abuser is not a member of the victim's household, the exception is not made. *See United States v. Iron Shell,* 633 F.2d 77, 83–85 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick,* 604 F.2d 1199, 1201–02 (9th Cir.1979). The instant case falls somewhere between the general rule and the exception. At the time of the alleged incidents Brian Nelson was not a member of T.N.'s household, although he periodically took her to his own home for overnight visits.

The Wisconsin Court of Appeals was satisfied that the trial court had properly found that T.N. was unavailable to testify at trial. *See State v. Nelson,* [31 Wis.2d 591, 393 N.W.2d 798 (table)] No. 85–1125–CR, slip op. at 4 (Wis.Ct.App. April 23, 1986), *aff'd,* 138 Wis.2d 418, 406 N.W.2d 385 (1987). The court reasoned that the postconviction hearing offered a meaningful opportunity to challenge the historical fact of T.N.'s unavailability and that, even if a new trial were granted, the evidence would be substantially the same, given the fact that no witness testified for the defendant that T.N. was available. The court then ruled that there was sufficient evidence in the record showing that T.N. would have been "traumatized," if required to testify and that she could have "given no meaningful testimony." *Id.* at 6–7.

Wisconsin's Supreme Court affirmed the unavailability ruling on similar grounds. The majority of the court concluded that the posttrial unavailability hearing was both adequate and meaningful, reasoning that:

> We agree with the defendant's contention that the trial court's ruling on his motion to dismiss at the close of the state's evidence did not satisfy the confrontation clause. It is clear that defendants must be given the opportunity to rebut the prosecution's argument that a party is unavailable. However, we conclude that the retrospective inquiry at the post-conviction hearing adequately accommodated the defendant's right to rebut the state's position.

*Id.* at 436 n. 6, 406 N.W.2d at 394 n. 6.[13] The court noted that only one witness—Dr. McLean—was called to testify on the unavailability issue, even though the defendant could have called his own witnesses. The court then ruled that: "The likelihood that any questioning of T.N. would cause severe trauma, as well as the uncertain efficacy of such questioning, leads us to conclude that T.N. was unavailable to testify at trial." *Id.* at 443, 406 N.W.2d at 395.

This court does not agree that the evidence in the record supports the conclusion that T.N. was unavailable to testify at trial. Without the benefit of any in-court or out-of-court observation of T.N. by the court or the jury, the Wisconsin courts merely noted that she was four years old and that she had been seen by a psychologist. Based on these facts and the opinions elicited from the psychologist, they then deduced that requiring her to testify would lead to further trauma and that, in any case, her testimony would be of little value.

As explained above, the United States Supreme Court has decreed that: "[A] witness is not 'unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain [her] presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968). There is nothing in the *Nelson* record to show that the state made any effort, good faith or otherwise, to obtain the presence of T.N. at trial. When a Confrontation Clause objection is made, it should alert the state to the need for presenting proof of the declarant's unavailabilty. *See United States v. Dorian,* 803 F.2d 1439, 1448 (8th Cir.1986) (Bright, Senior J., dissenting). Before calling Dr. McLean to the stand, the state made no effort to establish unavailability, but when the defendant's Confrontation Clause objection was renewed at the close of the state's case, the state merely pointed to T.N.'s age and to the testimony of Dr. McLean and another psychologist, Dr. Silberglitt, and argued that:

> Anyway, in the course of the 59 sessions that Doctor McLean has testified to, this child is undergoing tremendous trauma as a result of what happened between herself and her father. To this day she is still under the trauma. It has not been successfully cured, so to speak. There would have been no possibility, and I think this record makes it clear that that witness is effectively unavailable, not only because of her age, but

---

**13.** *See also State v. Lindner,* 142 Wis.2d 783, 792, 419 N.W.2d 352, 355–56 (Ct.App.1987) (allowing a postconviction unavailability hearing).

because of the trauma that was induced and the trauma that obviously would result by making her face the defendant and testify. Furthermore, the doctors have testified to their evaluations. They are expert psychologists. They are both psychologists who are expert in the field of children, and therapy and examinations of children and evaluations of children. Certainly they ·can express their opinion as to what the child is getting across and statements that the child has made. I don't think that in any way invades the province of the jury. That's what experts are for, to render opinions, and I don't think that this case law prohibits what these psychiatrists have testified to.

Brief of Respondent at Appendix R 21, p. 26–27. These arguments suggest that T.N. might not have been an effective witness, but it does not show that any effort was made by the state to produce T.N. Age is an aspect of competency rather than availability. *See, e.g., Kentucky v. Stincer,* —— U.S. ——, 107 S.Ct. 2658, 2660, 96 L.Ed.2d 631 (1987). However, under Wisconsin law every person is presumed to be competent to be a witness except as provided by sections 885.16 ("transactions with deceased or insane persons") and 885.17 ("transactions with deceased agent") of the Wisconsin Statutes. *See* Wis.Stat. § 906.01.[14] Wisconsin judges are not empowered to review a witness' competency. This is a matter of credibility to be dealt with by the trier of fact. *See State v. Dwyer,* 143 Wis.2d 448, 461, 422 N.W.2d 121, 125 (Ct. App.1988).

Wisconsin courts use the criteria set forth in section 908.04 of the Wisconsin Statutes to determine whether a witness is unavailable for confrontation purposes when any exception to the hearsay rule is at issue. *See, e.g., Dwyer,* at 462–463, 422 N.W.2d at 125–126 (hearsay ruled admissible under section 908.03(2) as an excited utterance). Section 908.04 states, in relevant part, that:

(1) "Unavailability as a witness" includes situations in which the declarant:

(a) Is exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of his statement; or

(b) Persists in refusing to testify concerning the subject matter of his statement despite an order of the judge to do so; or

(c) Testifies to a lack of memory of the subject matter of his statement; or

(d) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(e) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

Wis.Stat. § 908.04(1). Only that part of subsection (d) which speaks of "then existing ... mental illness or infirmity" is relevant to this situation. Dr. McLean testified that, at the time of trial, he was treating T.N. for what he perceived to be mental and emotional trauma; however, he never precisely defined the extent of this "trauma." This court assumes that any victim of crime, particularly child abuse, would suffer trauma which would persist for a period of time and that testifying in court would be upsetting. Nevertheless, courts have not carved out a general exemption from testifying for victims of child abuse. *See, e.g., United States v. Frazier,* 678 F.Supp. 499, 502 (E.D.Pa.1986) (three-year-old victim of sexual assault testified at trial).

In *Burns v. Clusen,* 798 F.2d 931 (7th Cir.1986), a habeas corpus action following a conviction for sexual assault, the victim's treating physician testified that, based on an examination conducted two months earlier, he had diagnosed the victim, L.L., to have a "schizophreniform disorder" and was of the opinion that if L.L. was forced to testify at trial there was a "high probability that it would cause anywhere from a

---

**14.** Section 906.01 of the Wisconsin Statutes provides that:

Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules.

moderate to substantial relapse and return of symptoms." *Id.* at 935. Even though the defense did not offer expert testimony to counter the doctor's testimony, the court found that the state court's factual findings were not supported by the record, in part, because the state's evidence was stale. The appellate court held that: "the state has not fulfilled its burden of proving L.L.'s unavailability as a precedent to offering her prior testimony. The prosecution has neither made stringent efforts to show that L.L. was unavailable, nor produced affirmative proof of L.L.'s actual unavailability at the time of trial in March 1981." *Id.* at 942. In arriving at this conclusion the court reasoned that:

A witness cannot be declared "unavailable" simply because the prosecutor or circuit court concludes that the witness might not want to testify. The witness must "persist in refusing to testify concerning the subject matter of [her] statement despite an order of the judge to do so." Wis. Stats. § 908.045(1) (1982). When another individual's liberty is at stake, the decision to allow a witness to be exempt from the public duty to testify must be made by the trial court, not the witness or the state. *State v. Burns,* 112 Wis.2d 131, 163, 332 N.W.2d 757 (1983) (Abrahamson, J., dissenting).

A declaration that a witness is "unavailable" because of mental disability cannot be a "back-door" acknowledgement that a witness is simply reluctant or likely to refuse to testify. Rather, the prosecution has the burden to prove that the witness has a "then-existing mental illness." It is true in this case that the defense counsel did not take advantage of numerous opportunities to force the State to meet its burden or to aid the court in clearing away confusion. Nevertheless, the burden is not on petitioner to prove that L.L. was available. The burden is on the State, and if it fails to meet that burden, the judge must either find the witness available, or require the State to bring before the court updated information which it requires to make a determination.

*Burns,* 798 F.2d at 942–43 (footnote omitted).

The court of appeals emphasized that:

The burden of proving the unavailability of the witness rests upon the party offering the prior testimony. If there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. *Ohio v. Roberts,* 448 U.S. at 74, 100 S.Ct. at 2543. The lengths to which the prosecution must go to produce a witness is a question of reasonableness. *California v. Green,* 399 U.S. 149, 189 n. 22. 90 S.Ct. 1930, 1951 n. 22, 26 L.Ed.2d 489 (1970).

*Id.* at 937.

The court then outlined the governing criteria:

In a situation where the State argues that a witness is unavailable because of mental illness, the judge must consider both the duration and the severity of the illness. With regard to duration, it is not essential to a finding of unavailability that the illness be permanent. The duration of the illness need only be in probability long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed, *United States v. Amaya,* 533 F.2d 188, 191 (5th Cir.1976), citing 5 Wigmore, *Evidence* § 1406(a) (Chadbourn rev. 1974). In the case of a mental rather than a physical disability, the trial judge's task is more difficult because there is often greater uncertainty as to the prognosis. *Parrott v. Wilson,* 707 F.2d 1262 (11th Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). A judge must weigh the desirability of a speedy trial against the possibility that a further delay may find the declarant competent.

As to severity, mental illness itself may not automatically render a witness unavailable. The judge must consider the symptoms, what tasks a witness is then capable of. While all victims of violent crimes may suffer emotional trauma, some victims may suffer far greater anguish than normally accompanies court appearances. *See, e.g., Warren v.*

*United States,* 436 A.2d 821, 828–29 (D.C.App.1981) (two psychiatrists independently conclude that if a rape victim were forced to testify, the probability of severely incapacitating psychological injury was high because her depression had reached suicidal levels).

*Id.* at 937–38.

This court cannot find any testimony by Dr. McLean or any of the other experts stating how long they expected T.N.'s trauma to persist. The state never asked this question. However, it is interesting to note that at the postconviction hearing in May of 1985, Dr. McLean testified that he had concluded his treatment of T.N. in February—approximately four-and-one-half months after trial. *See* Brief of Respondent at Appendix R. 26, p. 5. Therefore, it appears T.N.'s trauma was neither permanent nor of long duration.

As for severity, Dr. McLean testified that T.N. was not psychotic. *See Id.* at Appendix R. 20, p. 27. And there was no testimony that she would be rendered suicidal or harmful to herself by appearing for trial. The only negative effect which Dr. McLean predicted was a possible regression. *See Id.* at Appendix R. 26, p. 23. However, he also admitted that she had regressed or experienced trauma at various times during therapy, so it cannot be supposed that regression is an irreparable phenomenon to be avoided at all costs.

As in *Burns,* the state courts' rulings of unavailability in this case are not fairly supported by the record. The evidence does not show that T.N.'s mental "trauma" was of sufficient duration or severity to warrant excusing her from testifying at trial, as scheduled, or after a reasonable period of delay to allow for the completion of her therapy. Therefore, the court concludes that the unavailability prong of the *Roberts* test has not been satisfied.

This conclusion does not necessarily lead to the ultimate conclusion that Nelson is entitled to the issuance of a writ of habeas corpus. As explained above, under the *Inadi* decision, meeting the unavailability prong of the *Roberts* test may no longer be required when hearsay other than former testimony is admitted.

If the Confrontation Clause offers no more protection to the defendant than the rules of evidence provide, then the availability of the declarant is immaterial to the admissibility of a statement made for the purpose of medical diagnosis or treatment. However, the parties have not cited, and this court has not found, any post-*Inadi* decision in which a court has ruled that, under the Constitution, admitting hearsay statements under Federal Rule of Evidence 803(4), or a state equivalent, without making a finding that the declarant is unavailable, does not offend the Confrontation Clause. While statements made for medical purposes are not made under circumstances resembling former testimony or the other Rule 804 hearsay exceptions which require a finding of unavailability,[15] they are not generally considered equal in reliability to the records and statements excepted in subsections (5) through (23) of Federal Rule of Evidence 803.[16] One commentator has explained that:

15. The exceptions contained in Federal Rule of Evidence 804 include: (1) former testimony; (2) statement under belief of impending death; (3) statement against interest; (4) statement of personal or family history; and (5) a residual exception which excepts:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of

> justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

16. Subsections (5) through (23) of Federal Rule of Evidence 803 except the following from hearsay, whether or not the declarant is available: (5) recorded recollection; (6) records of regularly conducted activity; (7) absence of entry in records kept in accordance with the provisions

It may be that the Court [in *Roberts*] intended to impose a general unavailability requirement upon statements offered in criminal trials under the first four exceptions to the rule against hearsay.[17] ... It has been contended that these four exceptions have lesser reliability than some of the other exceptions.... In fact, during the drafting process, it was urged that they be included as a part of Fed.R.Evid. 804, which requires its own showing of unavailability.

Kirkpatrick, *Confrontation and Hearsay: Exemptions from the Constitutional Unavailability Requirement*, 70 Minnesota Law Review 665, 690–91 n. 132 (1986) (citations omitted).

Despite the uncertainty left by *Inadi*, the court believes that, under the facts of this case, T.N.'s statements to Dr. McLean should not have been admitted unless T.N. was unavailable to testify at trial. A finding of unavailability is clearly required under the "peripheral significance" test set forth in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1980) (plurality), because T.N.'s statements were both "crucial" to the prosecution and "devastating" to the defense. *See Id.* at 87–89, 91 S.Ct. at 219. *See also Pickett v. Bowen*, 798 F.2d 1385, 1387 (11th Cir.1986). The statements comprised the most significant substantive evidence on the essential elements of cause and fault. Furthermore, the state courts' assumption that T.N.'s testimony would have been of "small utility to the defendant," *see State v. Nelson*, 138 Wis.2d 418, 438, 406 N.W.2d 385 (1987), was unwarranted. Although Dr. McLean expressed doubt that T.N. would verbally respond to an in-court examination, at the very least her appearance would have given the jury an opportunity to observe her demeanor.

The suggestion in *Inadi* that a defendant who foresees some utility in cross-examining a witness should invoke the Compulsory Process Clause of the Sixth Amendment to call the declarant as his own witness is not applicable in this case where the declarant is the alleged victim. The Compulsory Process Clause only speaks of the defendant's right "to have compulsory process for obtaining witnesses *in his favor.*" U.S. Const. amend VI (emphasis supplied).

As explained above, this court has concluded that T.N. was not "unavailable" to testify in the constitutional sense. Whether or not this finding is required, the fact remains that T.N. did not testify and the petitioner was never afforded an opportunity for cross-examination. Therefore, under the still-viable second prong of the *Roberts* test, the court must determine whether these statements bear sufficient indicia of reliability "to overcome the weighty presumption against the admission of such uncross-examined evidence." *Lee v. Illinois*, 476 U.S. 530, 546, 106 S.Ct. 2056, 2065, 90 L.Ed.2d 514 (1986).

### 3. Indicia of Reliability

In *Roberts*, the Supreme Court said that the reliability of a hearsay statement "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). The trial court in *Nelson* did not evaluate the reliability of T.N.'s statements to Dr. McLean as hearsay. Instead, the court evaluated the statements

---

of paragraph (6); (8) public records and reports; (9) records of vital statistics; (10) absence of public record or entry; (11) records of religious organizations; (12) marriage, baptismal, and similar certificates; (13) family records; (14) records of documents affecting an interest in property; (15) statements in documents affecting an interest in property; (16) statements in ancient documents; (17) market reports, commercial publications; (18) learned treatises; (19) reputation concerning personal or family history; (20) reputation concerning boundaries or general history; (21) reputation as to character; (22) judgment of previous conviction; (23) judgment as to personal, family or general history, or boundaries.

**17.** The first four exceptions, found in Federal Rule of Evidence 803, are: (1) present sense impression; (2) excited utterance; (3) then existing mental, emotional, or physical condition; (4) statements for purposes of medical diagnosis or treatment.

as bases for Dr. McLean's expert testimony, despite the fact that Dr. McLean did not offer an ultimate opinion based on these statements. The court reasoned that the statements were properly admissible under section 908.03 of the Wisconsin Statutes because the bases for the expert testimony were disclosed to the defendant prior to trial, thereby giving the jury an adequate opportunity to assess the weight and credibility to be accorded the testimony. *See* Brief of Respondent at Appendix R. 21, p. 29.

Because Dr. McLean did not render an expert opinion, the Wisconsin Court of Appeals ruled that T.N.'s hearsay statements were properly admitted as "statements made for purposes of medical diagnosis or treatment." *See* Wis.Stat. § 908.03(4). Then, without citing any substantiating evidence, the court abruptly concluded that the testimony had "sufficient guarantees of trustworthiness." *State v. Nelson,* [131 Wis.2d 591, 393 N.W.2d 798 (table)] No. 85–1125–CR, slip op. at 6 (Wis.Ct.App. April 23, 1986), *aff'd,* 138 Wis.2d 418, 406 N.W.2d 385 (1987).

In affirming this ruling, the Wisconsin Supreme Court pointed out that T.N.'s statements to Dr. McLean fit "within a firmly rooted hearsay exception" (section 908.03(4) of the Wisconsin Statutes [18]). *State v. Nelson,* 138 Wis.2d 418, 444, 406 N.W.2d 385, 395 (1987). Nevertheless, the court recognized that "the existence of unusual circumstances may warrant exclusion of the evidence even if it falls within a firmly rooted hearsay exception." *Id.* at 444, 406 N.W.2d at 395. Therefore, because the court believed that the application of section 908.03(4) to a "psychologist-patient situation in which the patient is between three and four years of age, may in and of itself, constitute unusual circumstances," the court went on to identify

what it considered to be particularized guarantees of trustworthiness:

1. the cross-examination of Dr. McLean, his methodology, and his conclusions, in conjunction with the availability of his entire set of notes from the treatment sessions combined to assure that the jury had a satisfactory basis for evaluating the truthfulness of the admitted evidence;

2. the age of the declarant, T.N.;

3. the nature of the allegations of sexual abuse based on the theories that: (a) it is highly unlikely that children persist in lying to their parents or other figures of authority about sex abuse; and (b) children do not have enough knowledge about sexual matters to lie about them.

*See Id.* at 444–46, 406 N.W.2d at 396. Based on these factors, the Supreme Court concluded that the hearsay statements "meet the standards for reliability set forth in prior confrontation clause cases." *Id.* at 444, 406 N.W.2d at 396.

The three dissenting justices would have reversed the conviction and ordered a new trial on the grounds that the statements of the child did not fit within the section 908.-03(4) hearsay exception and did not have sufficient indicia of reliability.[19] *See Id.* at 447–50, 406 N.W.2d at 397. The dissenters pointed out that the exception for statements for purposes of medical diagnosis or treatment assumes that such statements "are reliable because 'the patient knows that the kind of treatment he receives, and its value and helpfulness, may largely depend on the accuracy of the information which he gives to the doctor.'" *Id.* at 447–48, 406 N.W.2d at 397 (quoting McCormick, *Evidence* § 266 at 563 (1984)). The dissent then reasoned that:

That element of reliability, despite the unsupported assertions of the majority,

---

18. *See* Part II(C)(1), above.

19. The dissent also believed that the child could have testified via videotape or some other nonconventional means, but that the child should not have been excused altogether from testifying. Nelson's trial was held before the effective date of the Wisconsin statute permitting videotaped depositions of child witnesses to be admit-ted into evidence. *See* Wis.Stat. § 967.04(7)–(10). Wisconsin courts have held that the use of such a deposition without a showing that the witness is unavailable violates the Sixth Amendment. *See State v. Lindner,* 142 Wis.2d 783, 790, 419 N.W.2d 352, 355 (Ct.App. 1987).

are absent here. The patient was three years old, there was no evidence that the child had any idea that the numerous sessions with the psychologist were for the purpose of treatment. Indeed, the record shows that the technique of eliciting information from the child was to simulate play. Thus, while there was no circumstance that would tend to cause a person, even in a *post litem motem* situation, to not tell the truth, the affirmative evidence of reliability that would be induced by a consciousness of the fact of treatment was entirely absent. The assertion that the interrogator was an authority figure is irrelevant to the rationale of the exception. There is no hearsay exception for statements made to authority figures. Unfortunately, it is the court here which gives recognition to the psychologist as an authority figure. Under this evidentiary scheme, the credence is being given not to the child, whose reliability is not enhanced by the circumstances, but to the hearsay testimony of the reporting psychologist.

*Nelson*, 138 Wis.2d at 448, 406 N.W.2d at 397.

This court agrees with the Wisconsin Supreme Court's conclusion that particularized guarantees of trustworthiness were required in order to avoid a Confrontation Clause violation in this case. The *Roberts* court stated that if hearsay testimony falls within a "firmly rooted hearsay exception," reliability can be inferred. *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. *See also Marshall v. Young*, 833 F.2d 709, 716 (7th Cir.1987). The hearsay exception for statements for purposes of medical diagnosis or treatment may be a "firmly rooted" exception from the standpoint of long-time acceptance.[20] *See, e.g., Meaney v. United States*, 112 F.2d 538 (2d Cir.1940); *Kennedy v. Upshaw*, 66 Tex. 442, 1 S.W. 308 (1886). However, because of her young age and alleged psychic trauma, T.N. is far from being the typical declarant under this exception. Her statements were not made under the typical circumstances in which a

patient, hoping for a quick cessation of physical pain, realizes that the effectiveness of treatment depends upon the accuracy of the information conveyed to the physician. *See, e.g., Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir.1986); *United States v. Narciso*, 446 F.Supp. 252, 288–89 (E.D. Mich.1977).

Dr. McLean is not a medical doctor. He is a clinical psychologist who was recommended to T.N.'s mother when she called the courthouse to ask whether Brian Nelson's visiting rights could be curtailed. *See* Brief of Respondent at R. 20, p. 49. The state courts assumed that the child realized that she was being diagnosed and treated by Dr. McLean because her sessions were scheduled on a regular basis and because she had to wait for her appointments in an anteroom. *See State v. Nelson*, 138 Wis.2d 418, 431–32, 406 N.W. 2d 385, 390 (1987). However, the record reveals that the salient feature of the facility in which Dr. McLean conducted most of his sessions with T.N. was that it was a simulated playroom, meant to put a child at ease. On direct examination, Dr. McLean offered the following description of the room:

> The play therapy room there that you wanted me to describe is, it has a long table, 6 or 8 feet long against the wall. Table is maybe three feet wide. On top of it are games and puzzles and coloring books and crayons and magic markers and puzzle cubes, that's a block in which the—you can take the pieces out and you have to put them in, different shapes in the right slots. Tinkertoys for the floor. There's a train under the table. There are children's pictures on the walls. There are a lot more games and puzzles. There's Play Dough under the table. There's a toy typewriter, toy telephone. There is a basketball hoop on one wall. Tinkertoys, and on and on, just loaded, just—a little toy gun. Almost any, children really think the room is almost anything a child would want in a room.

---

**20.** The parties have not cited, and the court has not located, any case explicitly stating that the federal counterpart to section 908.03(4), Federal Rule of Evidence 803(4), is a firmly rooted hearsay exception.

There is a little sink, some little girls sometimes will use the little dishes and they will be making cakes and all kinds of things.

Brief of Respondent at Appendix R. 20, pp. 20–21.

There is nothing in the record to show that Dr. McLean ever explained his role to T.N. or that he attempted to explain the purpose of the sessions. In *United States v. Renville*, 779 F.2d 430, 438 (8th Cir. 1985), a child abuse case, the court explained that a child's statement to a treating physician identifying the abuser can only be considered reliable "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." [21] The record reveals no such dialog between Dr. McLean and T.N. in this case. Moreover, the Wisconsin courts did not explain how this particular four-year-old girl would have had any prior experience or knowledge about psychological illness or its treatment.

Under these unusual circumstances, it is not clear that T.N.'s statements fall within the usual confines of the hearsay exception for statements made for the purpose of medical diagnosis or treatment. Therefore, reliability cannot be inferred without more.

■■■■ The respondent appears to recognize that these statements do not fit within the traditional rationale of the rule and argues, in the alternative, that the statements were admissible under the residual exception for "statements not specifically covered by any of the other exceptions but having equivalent circumstantial guarantees of trustworthiness...." Wis.Stat. § 908.03(24). *See also* Federal Rule of Evidence 803(24). This argument does not lessen the state's burden because the residual exception is not a "firmly rooted" hearsay exception, so particularized guarantees of trustworthiness are still required. *See United States v. Dorian*, 803 F.2d 1439, 1447 (8th Cir.1986).

Such guarantees are notably absent from the *Nelson* record. The state courts found that the reliability of T.N.'s statements was bolstered by the fact that Dr. McLean's notes [22] were disclosed to the defendant prior to trial, thereby giving Nelson an opportunity to challenge the doctor's methodology and conclusions by cross-examination and by the critique of another expert. *See Nelson*, 138 Wis.2d at 444–45, 406 N.W.2d at 396. However, this reasoning confuses the criteria for evaluating the bases of an expert's opinion with the criteria for evaluating the reliability of a hearsay statement. While the cross-examination of Dr. McLean might have given the jury a basis for evaluating the weight and probative value of his own testimony, it did not give the jury a reliable basis for evaluating the demeanor and credibility of T.N. herself.

Whenever the proffered testimony of an absent witness "provides 'direct evidence of guilt,' the court imposes a stringent presumption against admission of such evidence and recognizes a need for careful case-by-case analysis." *United States v.*

**21.** Courts have reasoned that if a declarant makes a statement while under the impression that she is being asked to indicate who was responsible for what happened, her response may very well be accusatory in nature and "any inherent reliability of such a statement is thereby destroyed." *United States v. Narciso*, 446 F.Supp. 252, 289 (E.D.Mich.1977).

**22.** Dr. McLean's testimony provided the only evidence from which the jury could find that T.N. actually made the statements in question. *See United States v. Guinan*, 836 F.2d 350, 358 (7th Cir.1988) ("statements are [constitutionally] admissible even where there was no cross-examination if it is clear (1) that the declarant actually made the statement in question; and (2) there is circumstantial evidence supporting its veracity"). Dr. McLean testified that he sometimes jotted down T.N.'s statements verbatim during the sessions. *See* Brief of Respondent at Appendix R.20, p. 29. Other notes contained his interpretation of T.N.'s nonverbal acts performed during "play therapy," a process Dr. McLean described as "a little bit like interpreting a dream in an adult." *Id.* at Appendix R. 20, p. 20. These notes were disclosed to the defendant prior to trial, but were not offered into evidence at trial. *See* Brief of Respondent at 27. Dr. McLean also testified that he had taperecorded some of the sessions, but that he had destroyed the taperecordings prior to trial. *See Id.* at Appendix R. 20, p. 83.

*Vigoa,* 656 F.Supp. 1499, 1511 (D.N.J.1987). In this case, T.N.'s statements comprised the only direct evidence on all the essential elements of the first degree sexual assault charge. The only corroborating evidence was the opinions of the experts Drs. Mc-Lean, Silberglitt and Nichols, each of whom believed that T.N. had had some sort of inappropriate sexual experience. Although these experts testified that T.N. had made the statements at issue, the truth of the matter asserted was not substantially corroborated by any other independent evidence. *Cf. United States ex rel. Bell v. Director, Department of Corrections,* 847 F.2d 399, 402 (7th Cir.1988). There was no physical evidence, no eyewitness, and no testimony that T.N. immediately reported any incident to anyone with whom she had a relationship of trust. Dr. McLean was not a person to whom T.N. naturally would have reported the incidents in question and her statements to him were made months after T.N.'s last visit with her father.[23]

A growing body of state legislation and decisional law, as well as commentary, recognizes the need for receiving the declarations of child victims as to abusive events and for accepting the reliability of children as to such evidence. *See, e.g., United States v. Cree,* 778 F.2d 474, 478 (8th Cir. 1985); *United States v. Frazier,* 678 F.Supp. 499, 504 (E.D.Pa.1986); *State v. Nelson,* 138 Wis.2d 418, 406 N.W.2d 385 (1987); Graham, *The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship,* 72 Minnesota Law Review 523 (1988). Federal courts have been willing to construe the statutory exceptions to the rule against hearsay broadly to permit out-of-court statements of alleged victims of child abuse to be admitted into evidence as excited utterances, or as statements for purposes of medical treatment or diagnosis, or as residual exceptions. However, such rulings are most often made in situations where the declarant also testified at trial

or, at least, where the prosecution made an effort to produce the witness. *See United States v. Shaw,* 824 F.2d 601 (8th Cir.1987) (eleven-year-old victim testified at trial); *United States v. DeNoyer,* 811 F.2d 436 (8th Cir.1987) (five-year-old boy described as "nonverbalizer" testified at trial); *United States v. Dorian,* 803 F.2d 1439 (8th Cir.1986) (prosecution called the five-year-old victim to the stand, but because of her age and obvious fright, she was unable to testify meaningfully); *United States v. Renville,* 779 F.2d 430 (8th Cir.1985) (eleven-year-old victim testified at trial); *United States v. Cree,* 778 F.2d 474 (8th Cir.1986) (four-year-old physical abuse victim present in court but was not called to the stand); *Ellison v. Sachs,* 769 F.2d 955 (4th Cir. 1985) (victim's preliminary hearing statements, which had been subject to cross-examination, admitted only after five-year-old found incompetent to testify by state trial judge); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980) (nine-year-old victim testified at trial), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Frazier,* 678 F.Supp. 499, 502 (E.D.Pa.1986) (three-year-old victim "confronted the defendant at trial and repeated her story and was questioned at length about her prior statements"). *See also Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050 (6th Cir.1983) (excited utterances of four-year-old victim admitted even though she was ruled incompetent to testify by state trial judge), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984). *But see also United States v. Nick,* 604 F.2d 1199 (9th Cir.1979) (excited utterances and statements for medical purposes admitted even though four-year-old victim not called as a witness).

In the *Nelson* case, on the other hand, T.N. did not testify at trial and the prosecution made no effort to produce her. Therefore, the court was obligated to search for particularized guarantees of trustworthi-

---

**23.** Some commentators are of the opinion that the passage of a considerable period of time between the alleged incident and the victim's statements provides an opportunity for improper influence on the part of a third person. *See*

Graham, *The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship,* 72 Minnesota Law Review 523, 532 n. 39 (1988).

ness before admitting T.N.'s statements as substantive evidence. But with full appreciation for the difficulties of all concerned in protecting the victim and prosecuting the perpetrator of child abuse, this court cannot conclude from this record, that T.N.'s statements to Dr. McLean bore sufficient indicia of reliability to overcome the weighty presumption against the admission of uncross-examined evidence. *See Lee v. Illinois*, 476 U.S. 530, 546, 106 S.Ct. 2056, 2065, 90 L.Ed.2d 514 (1986). Therefore, the court holds that the substantive use of T.N.'s statements to Dr. McLean denied Brian Nelson's rights guaranteed by the Confrontation Clause.

### D. *Harmless Error*

■■■ Confrontation Clause violations are subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680–84, 106 S.Ct. 1431, 1436–38, 89 L.Ed.2d 674 (1986); *Burns v. Clusen*, 798 F.2d 931, 943 (7th Cir.1986); *United States v. Bernard S.*, 795 F.2d 749, 756 (9th Cir.1986). Thus, the admission of T.N.'s statements to Dr. McLean do not require habeas corpus relief even though there was a Confrontation Clause violation, if the error was so unimportant and insignificant that it may be deemed harmless, consistent with the Constitution. *See generally Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). When claiming harmless error, the prosecution has the burden of proving "beyond a reasonable doubt that the [constitutional] error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828. In the context of trial, the issue is whether, absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in a not-guilty verdict. *See Id.* at 26, 87 S.Ct. at 828.

■■■ Whether a violation of the Confrontation Clause is harmless depends upon a variety of factors, including: (1) the importance of the evidence to the prosecution's case; (2) the overall strength of the prosecution's case; (3) the presence of corroborating evidence; and (4) whether the evidence was cumulative. *See Van Arsdell*, 475 U.S. at 684, 106 S.Ct. at 1438. In this case the respondent takes the position that any error was harmless because "on the critical issue of whether sexual contact occurred and whether the petitioner was the assailant, the statements made by T.N. to Dr. McLean parallel and are clearly cumulative to the hearsay statements of T.N. related by Susan Nelson [T.N.'s mother], Dr. Silberglitt [the prosecution's expert witness] and Dr. Nichols [the defendant's expert witness]." Brief of Respondent at 42.

Considering the factors in order, the court concludes that: (1) the statements were critically important to the prosecution's case in that they described sexual contact and could be interpreted to identify the defendant as the perpetrator; (2) the prosecution's overall case was not strong in that there was no physical evidence, no eyewitness testimony, no contemporaneous reactive statements by the victim, and no admissions by the defendant, *see United States v. Shue*, 766 F.2d 1122, 1133 (7th Cir.1985) (the case against the defendant must be "overwhelming" in order to apply the harmless error rule), *cert. denied*, — U.S. ——, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); and (3) there was no independent corroborating evidence of the essential elements of the crime. As to the fourth factor, the respondent characterizes the statements made to Dr. McLean as merely cumulative to the statements reported by Susan Nelson and by Drs. Silberglitt and Nichols. However, of the four witnesses, Dr. McLean, who had conducted approximately 59 sessions with T.N., gave the most extensive account of statements she had made pertinent to the charge against Brian Nelson. Susan Nelson, who had previously made an unsuccessful attempt to curtail her former husband's visiting rights, testified only to statements made by T.N. which led her to contact Dr. McLean for help in stopping visitation. These statements alone could not have established the elements of the crime. While Susan Nelson was a fact witness, Drs. Silberglitt and Nichols testified as experts in the field of clinical psychology. They did not treat T.N., but based their diagnoses of her on single interviews during which she

provided limited information. Thus, the statements admitted through the testimony of Dr. McLean differed in quantity and quality from the statements admitted through the testimony of the other three witnesses and cannot be characterized as merely cumulative.

Having reviewed these factors, the court concludes that the respondent has not met his burden of proving beyond a reasonable doubt that the Confrontation Clause error did not contribute to the jury's verdict of guilty in this case. Therefore, the error was not harmless.

### ORDER

■ Having concluded that the admission of T.N.'s statement to Dr. McLean violated Brian Nelson's Sixth Amendment right to confront a witness against him, the court must fashion appropriate relief "as law and justice require." 28 U.S.C. § 2243. Even though the court has ruled that the petitioner's rights were violated, the prevailing practice is to delay the petitioner's discharge so as to allow the state reasonable time in which to retry the petitioner if it wishes to do so. *See Whitley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 569, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *Warden, Wyoming State Penitentiary,* 401 U.S. 560, 569, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *Clausen v. Clerk of Circuit Court of Milwaukee County,* 537 F.Supp. 1233, 1237 (E.D.Wis. 1982).

Accordingly, the court ORDERS that Brian Nelson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (filed January 13, 1988) IS GRANTED unless trial is commenced within seventy (70) days of the date of this order.