UNITED STATES of America

v.

**Stephen Charles FRAZIER.**

**Crim. No. 85–00499.**

United States District Court,
E.D. Pennsylvania.

July 25, 1986.

---

500

Stephen V. Wehner, Seth Weber, Office of U.S. Atty., Philadelphia, Pa., for U.S.

Carol A. Koller, Sally A. Kocher, Defender Ass'n of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUDWIG, District Judge.

On March 7, 1986 defendant was convicted by a jury of assault with the intent to commit rape, 18 U.S.C. § 113(a); assault by indecent contact, 18 U.S.C. § 113(e); corruption of the morals of a minor, 18 U.S.C. § 13; and false statement, 18 U.S.C. § 1001. After denying his motion for a new trial, I sentenced him on April 17, 1986.[1]

The motion for new trial does not contest the conviction of false statement.[2]

■ The assault and corruption charges arose from events that occurred on October 17, 1984 [3] between defendant and Nicole Brooks, then age 3, at The Philadelphia Naval Station child care center where defendant worked as an aide. Nicole Brooks testified that, while they were in a bathroom, he smacked her face, removed her clothes and his pants, placed her on the floor and put his body on top of hers. He let her go when two of her girlfriends, having heard her crying, came to rescue her.[4] Defendant testified that he found the three girls playing in the bathroom, sent two of them out and smacked Nicole on the bottom for making a mess. He admitted lying to the police the next day when he denied having been in the bathroom with Nicole.

Defendant's new trial motion raises the correctness of two sets of trial rulings. The first concerns the admission of out-of-court declarations by Nicole as to the assault; the second, the exclusion of evidence offered by defendant to discredit the testimony of the victim, her mother, and her girlfriends.

■ Four declarations were received over defendant's objection.[5] The first statement was Nicole's initial report of the incident, which was given to her 14 year-old

---

1. On assault with intent to rape and on false statement, the sentences were three years imprisonment concurrently; on corruption of the morals of a minor, a consecutive probation of five years; and on indecent assault, sentence was suspended.

2. At trial, defendant testified that his employment application contained false statements as to his education and vocational experience, and in opening and closing statement his counsel conceded guilt as to this offense.

3. Defendant was not indicted until December 18, 1985, some 14 months following the occurrence. Upon hearing, in which I found that defendant did not show intentional delay and actual prejudice, defendant's motion to dismiss for pre-indictment delay was denied. *United States v. Sebetich,* 776 F.2d 412 (3d Cir.1985).

4. In the numerous accounts given by Nicole after the incident, there was no evidence of penetration excepting a statement given to a Philadelphia detective, who said Nicole told her and demonstrated that defendant had effected penetration. At trial, Nicole testified that he put "his private on mine." Hearing Tr., March 4, 1986, p. 14.

5. The victim's descriptions of the assault to two physicians, one on the night of the occurrence and the other about four weeks later, were admitted without objection. Fed.R.Evid. § 803(4).

sister upon Nicole's return home from school that day. The second was her account to her mother later in the afternoon. The third was given to a naval shipyard security officer who came to her home about seven p.m. that evening. The fourth was made to a Philadelphia detective on the following day. Considered as a group, each of these declarations contained variations and discrepancies and ranged from a vaguely described manual touching of the genital area to an explicit forcible rape. All of them, however, conveyed the allegation that a sexual assault of some type had been sustained by the child, and this point was corroborated by the opinions of two physicians who said her accounts to them and their findings upon examination were consistent with an occurrence of child sex abuse.[6] At trial, defendant challenged Nicole's competency to testify because, inter alia, of the time interval following the incident, nearly a year and a half, arguing that the child lacked the power of recollection over that lengthy time period.[7]

█ Defendant asserts in his motion for a new trial that the admission of the statements violated the Confrontation Clause of the United States Constitution and was improper under Federal Rule of Evidence 803(24). Since Nicole confronted the defendant at trial and repeated her story and was questioned at length about her prior statements, the Confrontation Clause objection is unfounded. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *United States v. Cuyler,* 548 F.2d 460 (3d Cir.1977). The admissibility of the statements under the hearsay catchall of 803(24) as substantive evidence is a more difficult issue.

█ I deferred ruling on the proffer of the declarations until after Nicole testified, at which point, in overruling the objection, I noted:

There are five elements necessary to qualify such statements and I find that the statements ... meet those requirements.... the circumstantial guarantees of trustworthiness equivalent to the other exceptions to 803 in that these were alleged to have been made close in time to the incident. They were made to people to whom Nicole would naturally have made the statements and I've also considered her very young age as a factor on credibility.

Secondly, the statements are offered as evidence of material facts.

They are, thirdly, more probative on the point ... than any other evidence that the Government can procure ... and [fourthly] under the circumstances of the case, and the nature of the charges, the interest of justice [is] best served by the admission of the statements into evidence and the purposes of the rules of evidence are served.

The last element, that is, the proponent must give the adverse party notice sufficient to have an opportunity to meet the statements. I've considered the fact that all of the four statements were provided some time ago to the defendant and I have not heard any specific point made that such notice, and furthermore, the formal notice given yesterday ... have not been sufficient to provide an opportunity to deal with those statements.

Hearing Tr., March 4, 1986, p. 58–59.[8]

█ At trial, defendant's objections to the use of 803(24) were that timely notice

---

6. One physician is a pediatrician on active duty with the Navy. The other physician is the director of emergency services at Children's Hospital, which unit is the center for child abuse cases in Philadelphia. Their examinations did not disclose any physical harm or evidence of penetration. Both found a vaginal infection which appeared to have originated before the incident.

7. With the government's and defendant's consent, Nicole and two other child witnesses were examined by a court-appointed child psychia-

trist as to witness competency, and the psychiatrist's report, which contained the opinion that the children were competent, was made part of the record. In a pretrial proceeding, I interviewed the children and determined that they were competent to testify.

8. The four statements, reduced to writing, were given to defendant by January 23, 1986. Formal notice of intent to use under 803(24) was given on the morning the case was called for trial, prior to jury selection. The evidence was received on the following day. Defendant's

had not been given and the Rule was inapplicable. The Rule states:

Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(24) Other exceptions.

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Better practice would have been to give written notice of the government's intention to rely on 803(24) at the time it turned over the statements to defendant. *See* Louisell and Mueller, *Federal Evidence*, § 472, at 941 (1980). However, the turnover occurred about five weeks before trial, and within the factual configuration of this case, it is hard to see how the defense was prejudiced by the lack of specific 803(24) notice. Defense counsel acknowl-

edged that the statements were admissible as prior inconsistent statements. To the extent that they were consistent with the victim's testimony, they were also admissible if "offered to rebut an express or implied charge ... of recent fabrication...." Fed.R.Evid. 801(d)(1). Even if defense counsel had not anticipated the offer under 803(24) as substantive evidence, it was probable that the recipients of the statements would be called to confirm having received them. Also, the two statements taken by the doctors were not objected to, and these statements were similar to those in issue. Fed.R.Evid. § 803(4).

Some courts would inflexibly bar the use of 803(24) unless advance notice was given. *E.g., United States v. Ruffin,* 575 F.2d 346 (2d Cir.1978); *United States v. Cowley,* 720 F.2d 1037 (9th Cir.1983) (admission was harmless error).[9] A less rigid approach has been taken where a fair opportunity to meet the statements occurred at trial and earlier notice would not have made a material difference. *United States v. Parker,* 749 F.2d 628 (11th Cir.1984) (no continuance requested).[10] The purpose of the notice requirement is to afford an opportunity to attack the trustworthiness of the statement. *See Piva v. Xerox Corp.,* 654 F.2d 591 (9th Cir.1981). The cases precluding the use of 803(24) have involved attempts to resort to the rule without notice during the trial when the evidence was about to be elicited. In this case, I believe defendant had a fair opportunity to attack the trustworthiness of the statements.

Citing *In re Japanese Elec. Prods., Antitrust Litigation* 723 F.2d 238 (3d Cir. 1983),[11] defendant contends that 803(24) was intended to be narrowly construed and that to admit the victim's statements in this

---

counsel stated that she was aware that the statements could be used for impeachment but not as substantive evidence under 803(24). Her claim was that she had "one evening to completely rethink the case in terms of these statements coming in as substantive evidence ... that's a substantial change in how this case is viewed and how we prepared our theory of a defense...." Hearing Tr., March 4, 1986, p. 60.

**9.** Rigid application of the notice requirement has been criticized as at odds with the overriding goals of truth and fairness set forth in

Fed.R.Evid. 102. *See* 4 *Weinstein's Evidence*, ¶ 803(24)[01], at 803–69 (1987).

**10.** The court of appeals concluded that no trial objection was made because no continuance was needed. *See United States v. Bailey,* 581 F.2d 341 (3rd Cir.1978) (espousing lack of prejudice approach).

**11.** *Rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

case violated the Rule's intendment. While it is generally agreed that 803(24) is a defined catchall and not a "loophole" for otherwise inadmissible hearsay, *see, e.g., United States v. Love,* 592 F.2d 1022 (8th Cir.1979), the Court of Appeals in *In re Japanese Elec. Prods., Antitrust Litigation* held that the residual exception should stand on its own and not be restricted to evidence of a "Near Miss" category almost or arguably admissible under a specific hearsay exception. Two decisions last year in the Eighth Circuit affirmed trial rulings that a child victim's hearsay statements as to abuse had circumstantial guarantees of trustworthiness and as such were admissible under 803(24). *United States v. Renville,* 779 F.2d 430 (8th Cir.1985) (sex abuse of an 11 year old); *United States v. Cree,* 778 F.2d 474 (8th Cir.1985) (physical abuse of 4 year old). These decisions considered the age of the child declarant to be a significant factor in support of the finding of trustworthiness. *See United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) (child's statement not within traditional rationale of hearsay rules). In *Renville,* the most important criterion of trustworthiness was that declarant testified at trial and was subject to cross-examination. "Where the jury is thus provided with the declarant's in-court testimony and explanation for prior inconsistent statements, the concern with circumstantial guarantees of reliability is lessened." *Renville,* 779 F.2d at 440.[12] *See Anderson v. United States,* 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974).

Here, as in *Renville* and *Cree,* the declarations were made to familiar and otherwise appropriate persons shortly after the acts charged, and although the stories at times varied, they were consistent with other admissible statements later given to physicians. In this case, these were also the child's first declarations after the alleged sexual occurrence.

A growing body of state legislation and decisional law, as well as commentary, recognizes the need for receiving the declarations of child victims as to abusive events and for accepting the reliability of children as to such evidence. *See, e.g.,* Note, "A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases," 83 Col.L. Rev. 1745–1766 (1983); Comment, "Child Witnesses in Sexual Abuse Criminal Proceedings," 13 Pepperdine L.Rev. 157–184 (1985). Although 803(24) has a narrow focus and should be used sparingly, its application here appears to comport with congressional intent to permit circumstantially trustworthy evidence when doing so is in the interest of justice. Here, a long lapse of time occurred before trial. The jury was entitled to know what the child said to those she would be expected to inform shortly after the incident.[13] These additional factors weigh in favor of 803(24) analysis in this case. Defendant's argument is rejected that the Rule is categorically inapposite to child hearsay declarations or, if not, that *Renville* and *Cree* should be strictly limited to their particular fact settings.[14]

▬ Defendant's disallowed proffer of four items of evidence to discredit the victim, her mother, and the two child witnesses consisted of the following: 1) one of

---

**12.** In *Cree,* the child declarant was not available at trial.

**13.** Defendant brought out that no complaint was made by the victim or her friends to anyone at the school on the day in question and that none of the staff was aware of the incident until the following day when defendant was arrested.

**14.** The residual exception has been applied to child hearsay in Wisconsin for a number of years. *Bertrang v. State,* 50 Wis.2d 702, 184 N.W.2d 867 (1971). While described as an improvement over the spontaneous utterance and

tender years approaches, it has been criticized as creating a class exception within the residual exception. "A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases," 83 Col.L.Rev., at 1761–1763. However, that criticism can be leveled at any defined type of hearsay, such as a witness's pretrial affidavit, the admissibility of which is approved in a series of decisions. *E.g., United States v. Popenas,* 780 F.2d 545 (6th Cir.1985). I believe child hearsay, like other 803(24) issues, should be considered on a case-by-case basis.

the child witnesses had discovered her mother in October, 1984 having nonmarital sexual relations—this to be adduced through the child's father; 2) the other child witness was sexually molested nine days before the alleged crime occurred here—her father would so testify; 3) the victim's mother had been guilty of child abuse of her other children—as shown in her drug and alcohol treatment records; 4) a child sexual assault that occurred at West Point Military Base Day Care Center was discussed by employees of the Philadelphia Naval Base Day Care Center in front of the children on October 17, 1986, the date of the occurrence in this case. Defendant contends he was thereby improperly prevented from showing bias of the witnesses, as he was entitled to do under *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (common law rule permitting proof of bias is implicitly sanctioned by Fed.R.Evid. 401 and 402 on relevance and by federal rules relating to credibility). He also claims the denial of the right to confront witnesses under *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

Relevant evidence is—

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed.R.Evid. 401.

Evidence as to the credibility of adverse witnesses and of their testimony is subject to the limitations of relevance. *United States v. Kennedy*, 714 F.2d 968 (9th Cir. 1983). This means that the impeachment must be probative and related to the issues in the trial. *United States v. Lehr*, 562 F.Supp. 366 (E.D.Pa.1983), aff'd, 727 F.2d 1101 (3rd Cir.1984).

Even if relevant, the evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." Fed.R.Evid. 403. *United States v. Diecidue*, 603 F.2d 535 (5th Cir.1979).

I do not see how the alleged sexual incidents involving the child witnesses were probative of bias or prejudice or connected to this case.[15] Defendant's contention that the victim's mother had been a child abuser also lacked relevance inasmuch as defendant did not seek to defend or explain this case by claiming that the mother was the cause of the alleged abuse of Nicole. As represented, the discussion by the employees of the child care center of an episode of sexual abuse at another center was extremely vague. It was offered to rebut the testimony of the pediatric abuse specialist that was elicited on defendant's cross-examination. He said that young children do not fabricate sexual assaults because these occurrences are not part of a child's world or readily known by them. He refused to agree that children commonly fantasize or make up stories about adult sexual experiences.[16] In order to show that the children in this case were aware of such occurrences, defendant advanced the evidence to which I sustained objection.[17]

I do not believe the evidence so proffered showed bias or prejudice within the limitations of relevance. I believe the prior sexual incidents and the mother's alleged child abuse raised collateral issues and would have produced confusion, such that, even if

---

**15.** Although arguably the children were angry at defendant, there is no evidence to suggest that such bias or prejudice was related to the prior unconnected sexual events allegedly involving the child witnesses.

**16.** This psychiatric opinion reflects contemporary research: "[Y]oung children are incapable of describing sexual acts unless they have actually experienced them. These findings directly contradict the traditional notions that children cannot be relied upon to tell the truth, because they cannot distinguish between fantasy and reality and that children's memories are much less reliable than adults." 23 ABA: The Judges' Journal 1 (Fall 1984).

**17.** Defendant was given full opportunity to cross-examine the children and the mother as to their feelings towards him and as to any reasons that they might have for bias or prejudice against him. *See United States v. Sellers*, 658 F.2d 230 (4th Cir.1981).

relevant, the evidence was excludable under Rule 403. I do not believe any of the evidence tended to prove the children's knowledge of sexual matters related factually to the charges in this case.