Robin A. TRUMAN,* Petitioner,

v.

Dennis I. WATTS, Respondent.

Family Court of Delaware,
New Castle County.

Submitted: March 19, 1991.
Decided: April 23, 1991.

* Pseudonyms for all parties have been adopted to assure confidentiality pursuant to Supreme Court Rule 7(c).

H. Alfred Tarrant, Jr., of Cooch & Taylor, Wilmington, for petitioner.

Gary C. Linarducci, of Doroshow, Pasquale & Linarducci, Wilmington, for respondent.

ABLEMAN, Judge.

This is the Court's decision on a Motion in Limine filed by respondent Dennis I. Watts in the above-captioned visitation case. The motion requires this Court to decide whether certain hearsay statements and expressive conduct, made by a two-year-old child declarant to her mother, day-care provider, and to a social worker who interviewed her at the mother's request, are admissible in a proceeding to determine whether the respondent's visitation rights with respect to that child should be restricted or terminated. The motion seeks a pre-trial determination that the child's statements and/or conduct are inadmissible hearsay and cannot be introduced at the trial on petitioner Robin A. Truman's Petition for Termination of Visitation. Petitioner, who is the natural mother of the child in question, shall hereinafter be referred to as "Mother." Respondent, the child's natural father, shall hereinafter be referred to as "Father."

The issues presented by this motion originate out of a Petition for Visitation Termination filed by Mother on or about September 13, 1990. Contemporaneously with the filing of the foregoing motion, Mother also filed a Motion and Affidavit to Modify Custody, seeking to modify a prior consent Order dated June 6, 1990, awarding joint custody with primary residence with Mother and liberal visitation to Father. In her Motion to Modify Custody, Mother alleges acts of sexual molestation by Father reported to her by her daughter, as well as several reports by the child of physical abuse against her, in the form of kicking and punching. Both of the above petitions were accompanied by a sworn affidavit of Mariann Kenville, the DCPS worker to whom the child had reported these incidents. In the affidavit, Ms. Kenville requested a temporary termination of Father's visitation rights.

The affidavit resulted in the Petition for Visitation Termination and the Motion and Affidavit to Modify Custody Order being afforded priority review by the Office Judge, who entered an *ex parte* Order on September 12, 1990. In that Order, Judge Conner suspended visitation "for thirty days or until D.C.P.S. investigates." The Division was directed to complete its investigation within thirty days. The Court further stated that "there must be a videotape of the initial interviews with the child." The Court also indicated that Mother could file for an extension of the Order suspending visitation if the Division could support the allegations of sexual abuse, and a hearing would then be scheduled.

Meanwhile, Father apparently had not yet been apprised of the September 12, 1990 *ex parte* Order suspending his visitation rights since he filed a Rule to Show Cause Petition on September 14, 1990, wherein he requested a finding of contempt against Mother for denying him visitation rights. That Petition was ultimately withdrawn by Father on December 18, 1990 and the withdrawal was approved by the Court on December 31, 1990.

On October 12, 1990, Father filed a Motion to Resume Visitation, wherein he denied any allegation of sexual abuse. Three days later, Mother filed a Motion for Extension of the suspension Order, which was followed by an Amended Motion which simply updated the allegation of DCPS' support of the abuse and eliminated the "on information and belief" language. Since a hearing had not been conducted in this matter, even preliminarily, the Court scheduled a hearing for November 21, 1990. In the interim, visitation was suspended.

After a brief hearing, the Court determined that there was probable cause to

continue extending protection to the child, although it was believed that the child could be adequately protected by requiring all future visitations to be supervised. An Order granting supervised visitation was entered and a schedule was established. That schedule was subsequently modified by stipulation of the parties, which was entered as an Order of the Court on February 6, 1991.

At the hearing on the question of whether to reinstate visitation or extend the suspension Order, the Court expressed its views regarding the question of this child's competency as a witness. Specifically, the Court noted that it was concerned that a two-year-old [1] child did not have the requisite competency to assist the trier of fact, basing its views more on the child's inability to verbalize at all, rather than on any other basis such as the ability to distinguish right from wrong or understanding the meaning of an oath. The Court ruled at that time that Karisa, being only two years of age, was not competent to testify. While the Court still has residual concerns because of the child's young age, it did not at that time have the benefit of more thorough research on the issue. Moreover, the Court had not fully explored the corresponding evidentiary problems that might arise by excluding the child from testifying entirely. Thus, notwithstanding the statements made at the November 21, 1990 hearing, this Court reserves its right to reconsider its rulings and determine the issue of competency of Karisa at the final hearing, as will be more fully discussed below. Similarly, having had the benefit of the thorough and complete briefs of counsel regarding the issue of the admissibility of the child's out-of-Court statements, this decision will more fully address that question as well.

\* \* \*

This case arises out of allegations that Father has sexually abused his now three-year-old daughter, Karisa Watts, born on April 2, 1988. These allegations first surfaced in the Fall of 1990 when the child was only two years of age. At that time, it is alleged that Mother observed that Karisa was masturbating frequently and had also been sticking her fingers and objects into her vagina. It is further alleged by Mother that, when she questioned Karisa about her behavior, the child stated that her father did those things to her.

Following the child's initial disclosure to her mother, she was interviewed by an employee of the Division of Child Protective Services Sexual Abuse Unit, Mariann Kenville. Ms. Kenville, a "Senior Family Service Specialist," questioned the child, using anatomically correct dolls, to determine whether the disclosures to Mother could be verified. The child again implicated her father and, in response to specific questioning, also demonstrated the activity by pressing her fingers into her vagina and by doing the same thing to the doll. It is also alleged that Karisa made similar statements to her daycare provider.

Father submits that the Court should not have ruled that the child is incompetent to testify without first requiring her personal appearance before the Court. While he agrees with the determination that a child of two and a half years' old is incompetent to testify, he objects to the admission of any statements made to her mother. He argues that, if the child is held to be an incompetent witness, then the out-of-Court statements made by the child to a social worker, daycare provider, or to her mother, cannot be admitted either, as they are clearly hearsay statements, not made under oath, and not subject to cross-examination. Additionally, Father submits that there are no exceptions to the hearsay rule which would allow for the admissibility of these proffered statements.

In response to these arguments, Mother submits that the child is in fact, by virtue of her age, incompetent to testify in Court. She argues, however, that the out-of-Court statements made by the child to Ms. Kenville, the daycare provider, and to her, all

---

1. At the time that the child made the statements in question, she was only about two and a half years' old. By the time of trial she will be three.

of whom will testify at trial, are nevertheless admissible under Delaware Law pursuant to D.R.E. 803(24), since the child's statements have "equivalent circumstantial guarantees of trustworthiness."

For reasons which will be discussed more fully hereafter, the child involved in this case shall be made available to testify. If necessary, she may be called as a witness, at which time the Court will engage in voir dire to determine whether the child understands the difference between truth and falsehood. If the child is incapable of recollecting events, or does not have sufficient linguistic maturity to express herself at trial, then her verbal inability will be viewed by the Court as a matter of weight or credibility in light of all the other evidence. Secondly, her out-of-Court statements made to others will also be admitted for the initial purpose of determining whether the circumstances surrounding the statement satisfy D.R.E. 803(24). If the Court is satisfied that they do, the statements shall be admitted for substantive consideration. The concerns and apprehensions raised by Father, such as the failure of DCPS to videotape the interview, the possibility of suggestion, and the gap of time between the incident and the child's revelations, will be considered by the Court in terms of what weight to give to the child's utterances. However, none of these factors, either in combination or alone, require exclusion of the evidence as a matter of law.

### Competency

█ I turn first to the question of the child's competency as a witness. The issue of the competency of a child to testify has been the subject of some confusion. Certainly, in this case alone the issue has not only been perplexing but of concern to the Court and counsel, all of whom have recognized the difficulty presented by the very young age of this particular child. In an off-hand discussion, the Court expressed its belief that Karisa—being only two years' of age—was not competent, basing its ruling upon its awareness of the extremely limited verbal capacity of a two-year-old, rather than upon her lack of truthfulness

or understanding of an oath. Having now had the opportunity to read the decisional law in this area, it is apparent that the Court's ruling was made precipitously, that the child must at least be available at trial, and that any inability to communicate, recollect, or express herself should be considered by the Court in determining what weight to give to her statements, and ultimately her credibility.

At common law, a witness had to be able to perceive, recollect, and express the subject matter of his testimony, in addition to being able to distinguish between truth and falsehood. *Kelluem v. State*, Del.Supr., 396 A.2d 166 (1978). With the adoption of the Delaware Rules of Evidence, however, the sensory requirements were discarded, and mental or moral qualifications are not specified, with all witnesses presumed to be competent. *Ricketts v. State*, Del.Supr., 488 A.2d 856 (1985).

In the *Ricketts* case, the most recent decision interpreting Rule 601 of the Delaware Rules of Evidence regarding competency, the Delaware Supreme Court was faced with the issue of whether it was appropriate for the trial court, in a first-degree rape case, to permit the six-year-old child victim to testify. The Court held that the six-year-old child is presumed competent to testify "once the trial judge is satisfied by voir dire that the child understood her obligation to tell the truth and the difference between truth and falsehood." 488 A.2d at 857. In so holding, the Court noted that Rule 601 adopts the position that "almost anyone is competent to testify," and that concerns of capacity are more appropriately issues of credibility or weight of the evidence. The Court also quoted from the Advisory Committee's Note to the Federal Rules of Evidence, from which the Delaware Rules are derived. The Advisory Committee observed:

[N]o mental or moral qualifications for testifying as a witness are specified. * * * Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight

and credibility, subject to judicial authority to review the sufficiency of the evidence.

■ Although the *Ricketts* decision suggests that a young child witness need only demonstrate an understanding of her duty to be truthful, the Court is mindful that that case involved a six-year-old rape victim, while the child witness in the case at bar is only three. Indeed, she was only two years' of age at the time she made her initial *disclosures*. Fortunately, by the time of trial, she may have developed sufficiently to be able to alleviate the Court's initial concern regarding her ability to communicate at all, but her very young age may nevertheless render any efforts to elicit testimony or to cross-examine her of limited value. Notwithstanding these potential difficulties, the law is nevertheless clear that she is at least initially presumed competent, that is, a witness not "wholly without capacity," and she should therefore at least be made available to testify. If she *is* called as a witness, it will be necessary, as a preliminary matter, to determine whether the child can distinguish between falsehood and truth. Any other disabilities that may be demonstrated at trial will be considered by the Court in terms of assessing credibility and the weight to afford to the child's testimony.

### Admissibility of Hearsay Statements

■ Having concluded that the child should be available at the time of the hearing, Father's arguments regarding the impropriety of admitting the child's out-of-court statements lose their force, since her availability would satisfy his concerns regarding the opportunity for cross-examination, assuming the child can be considered a suitable subject for cross-examination. However, anticipating that, even if the child understands the importance of telling the truth, she may still be unable to testify meaningfully, or her ability to recall events may be severely limited because of her age,

this Court must determine whether the prior statements she made to others are nevertheless admissible in evidence. In my judgment, Karisa Watts' statements to Mother, the DCPS professionals, and others, shall be admitted preliminarily under Rule 803(24) of the Delaware Rules of Evidence as substantive evidence, unless the manner in which those statements were elicited render them so unreliable as to be deemed not worthy of consideration by the Court.

■ In reaching this conclusion, the Court believes it is critical to focus on the nature of this proceeding and the type of relief which is sought, because it is quite clear from a reading of Father's brief that he has neglected to distinguish this case—wherein the focus is the child—from a *criminal* case in which the charge is sexual abuse and the issue is the guilt or innocence of the alleged perpetrator.[2] Contrary to Father's assertions, this is a noncriminal proceeding in which his conduct is not the only issue in this case. While the Court recognizes that, as a practical matter, whether to afford or deny the relief sought in this case will depend upon the proof of Father's behavior with respect to Karisa, nevertheless, this entire proceeding centers upon the child's interests and welfare, and whether or not her security, stability, or safety are or might be impaired.

Indeed, this is a visitation modification case in which Mother seeks to restrict Father's access to the child. The relief she requests can only be granted upon a finding that contact between the child and Father will "endanger the child's physical health or significantly impair his or her emotional development." 13 *Del.C.* § 728(a). The focus of this action, then, is not whether conduct constituting child abuse occurred, but whether something occurred which constitutes a prospective peril to the child. Moreover, while it is understandable that Father has come to view

---

**2.** Father's brief is replete with references to criminal procedure and to constitutional principles applicable in the context of a criminal case. For example, he uses the term "indictment" and argues that evidence of the child's statements does not support a "conviction". He speaks in terms of an assumption of "guilt" and claims to have a right of "confrontation of witnesses". All of these concepts are inapplicable to this visitation case.

this case as one where he must defend against accusations against him, the Court's concern instead is directed towards the child and her best interests as is appropriate in all visitation cases.

▆▆▆ Similarly, Father's contention that admission of the out-of-Court statements violates his right to confront his accusers also misconstrues the nature of this proceeding. The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: *"In all criminal prosecutions,* the accused shall enjoy the right ... to be confronted with the witnesses against him" (emphasis supplied). Similarly, Article 1 § 7 of the Delaware Constitution secures the right of confrontation for criminal defendants and does not specifically apply to civil proceedings. *See, In re James A.,* R.I.Supr., 505 A.2d 1386, 1390 (1986).[3] A civil litigant's right to confront witnesses is generally secured instead by concepts of procedural due process. Therefore, the question is not whether Father is guaranteed a constitutional right of confrontation or cross-examination in the civil context, but rather whether due process in this case necessitates that Father be afforded the right to cross-examination. This is a determination that must be made in light of the particular facts and circumstances of each case.

Father submits that the right to cross-examine and confront the child about her statements is essential to afford him due process of law. But clearly, what would constitute due process for Father in this instance can only be determined relative to the other interests at stake in this action, most notably those of the child. The United States Supreme Court has recognized that due process is not a rigid concept but one that must of necessity be determined by balancing the conflicting rights of the individuals involved. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551

(1972). In *Stanley v. Illinois,* 405 U.S. at 650–51, 92 S.Ct. at 1212, the Court observed that:

[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation and firmly establishes that what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

While it has been recognized that several areas of Family Court subject matter jurisdiction implicate liberty interests nearly on a par with those at stake in criminal prosecution, this visitation action is not among them. *See, Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *William H.Y. v. Myrna L.Y.,* Del.Supr., 450 A.2d 406, 410, n. 11 (1982). Heightened procedural safeguards may even be required in dependency/neglect cases, *Edward H. v. DCPS,* Del.Supr., 539 A.2d 1050, 1052 (1985); *Charles v. Charles,* Del.Supr., No. 118, 1990, Moore, J. (Nov. 13, 1990) at p. 5 [584 A.2d 1228 (table) ], but they are not applicable, to the extent that Father would argue, in the context of this visitation modification case.

▆▆▆ It is peculiar to the domestic relations area that strict adherence to concepts of procedural due process must also be tempered by the need to afford protection to the child whose interests are also at stake, though she is not a party to the action. The private interest potentially affected is the relationship between parent and child, which Mother seeks to restrict. If the Court were to conclude, even errone-

---

**3.** In *Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court held that admission of a two-and-a-half year old child's hearsay statements to a pediatrician in a sexual abuse case violated the defendant's Confrontation Clause rights be-

cause the statements were unreliable under the particular circumstances of that case. The United States Supreme Court specifically refused to erect a *per se* rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial.

ously, that Mother has met her burden of establishing a need for protection of her daughter, the result would be a temporary restriction of Father's visitation rights, through either supervision or termination for a period necessary for him to complete therapy, with gradual reunification as an ultimate goal. If, however, the Court were to reach an erroneous adjudication in favor of Father, its ruling might greatly imperil the child. The Court must consider application of the Delaware Rules of Evidence, mindful of the competing interests involved. And, while the rights of a parent are a most essential consideration, the welfare of the child is always paramount.

 Not only is this case distinguishable from a criminal case on the basis of the competing interests involved, but it is likewise distinguishable because it will be tried before a Judge, rather than a jury, and a Judge is presumed to have the capability to attribute the proper weight to the evidence and to disregard evidence that is unreliable. Indeed, a criminal jury trial, where the admission of improper evidence may pose a threat to the accuracy of the verdict is far different from a case where a Judge is responsible for carefully assessing the reliability of these statements, as the Court did, for example, in *Macon v. Konrad*, Del.Fam., Civil Action No. CN88–8363, 1990 WL 143875, Conner, J. (August 27, 1990). Any deficiencies or bias in the manner in which the hearsay statements were elicited can be more readily detected by a Judge, and such factors will affect the weight the Court will give to such evidence. The Judge, unlike a jury, should be trusted to be able to evaluate the evidence accurately and properly, with due regard for the interests that are at stake.[4]

The parties agree that, if the proffered statements are to be admissible at all, they must be admitted under Rule 803(24) of the

Delaware Rules of Evidence, the "catchall" or residual hearsay exception, as no other specific exception would be applicable herein. Rule 803(24), which is substantially the same as the Federal Rule 803(24), provides as follows:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness [is not excludable as hearsay], if the Court determines that: (A) The statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by the admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or the hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Federal cases which have applied the foregoing exception in the context of child sexual abuse cases have generally held that there are five conjunctive requirements that must be satisfied before a hearsay statement is admissible under F.R.E. 803(24). *United States v. Dorian*, 8th Cir., 803 F.2d 1439 (1986). In the *Dorian* case the Eighth Circuit Court of Appeals stated these requirements as follows:

(1) The statement must have circumstantial guarantees of trustworthiness equivalent to the twenty-three specified exceptions listed in Rule 803;

---

**4.** The United States Court of Appeals for the Sixth Circuit has gone so far as to hold that the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), that a nontestifying co-defendant's confession implicating another defendant cannot be introduced into evidence when they are tried together, is not applicable at bench trials. *Rogers v. McMackin*, 6th Cir., 884 F.2d 252 (1989). The Court in

*Rogers* reasoned that the purpose of the *Bruton* rule, which rested on the assumption that juries cannot be trusted, even with proper instructions, to consider a non-testifying co-defendant's confession solely in relation to the co-defendant's case, is not present in a bench trial where the trial Judge is able to separate the proof as to each defendant.

(2) The statement must be offered as evidence of a material fact;

(3) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts;

(4) The general purposes of the Federal Rules and the interests of justice must best be served by admission of the statements into evidence; and

(5) The proponent of the evidence must give the adverse party the notice specified within the rule.

*Dorian,* 803 F.2d at 1443.

In the *Dorian* case, a father was convicted of assault with intent to commit rape of his five-year-old daughter. On appeal, the defendant argued that it was error for the trial judge to have admitted the child's out-of-Court statements describing the abuse through the testimony of her foster mother, after it was determined that the child was unable to testify meaningfully because of her age and fear. The Court of Appeals affirmed the conviction, finding that the trial court had not abused its discretion in admitting the hearsay statement under F.R.E. 803(24). *Dorian,* 803 F.2d at 1440.

In applying the above factors to the case at bar, the Court can conclude initially that the requisite notice has been provided in this case, as Father has been on notice, at least as early as the preliminary hearing that occurred on November 21, 1990, that Mother sought admission of these statements. Certainly, he was aware sufficiently in advance to enable him to interpose the instant challenge. In addition, there is no question that the evidence offered will be material to this proceeding, which involves Father's visitation rights and the issue of whether the child needs to be protected in the future if the specific conduct alleged is proven.

Similarly, the child's statements that are offered would be more probative of the question of whether Father molested Karisa than any other evidence that Mother could present or procure through reasonable efforts, since the child no longer remembers the alleged events or is no longer capable of testifying concerning them. To argue, as Father does, that in cases of suspected child abuse, the Court must rely upon independent objective evidence "such as testimony from a medical expert that bruises or irritation of the skin were found on the child," or that "a competent witness heard the defendant admit incriminating statements" clearly misses the point. As Mother points out in her brief, the child's out-of-court statements may be the single most probative evidence in the case, as physical evidence of contact may not exist, nor are there likely to be eyewitnesses to the incidents. Mother's brief contains a particularly persuasive comment from a Colorado Law Review article:

> The unusually compelling need for children's hearsay statements in sex abuse cases is demonstrated primarily by the fact that the statements often constitute the only proof of the crime. Physical corroboration is rare, for the crimes committed are predominantly nonviolent in nature. Most crimes consist of petting, exhibitionism, fondling, and oral copulation, activities that do not involve forceful physical contact. The lack of physical corroboration can also be attributed to the fact that most children, for a variety of reasons, do not resist their attackers and succumb easily.

*Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Col.L.Rev. at 1749–50.

To suggest that the type of clearly improper activity just described can only be proved by confessions or evidence of physical injury, when such evidence is unlikely to exist at all, is to render this Court powerless to protect very young victims of sexual abuse.

I turn next to the requirement that the general purposes of the Federal Rules and the interests of justice must best be served by admission of the statements into evidence. As already indicated, the exclusion of the statements at this juncture would be likely to result in the dismissal of Mother's Petition to Terminate Visitation, leaving her with no means to protect her child from future abuse, if such protection is found to be necessary. This Court, sitting as the

trier of fact, can certainly discriminate sufficiently between those statements that are unreliable or suspect by virtue of suggestion, coaching, prompting, or manipulation from those that are spontaneous, trustworthy, and truthful. The Court will assess each statement to determine whether it was properly elicited and whether it possesses particularized guarantees of trustworthiness after all the evidence has been received. It would not be in the interests of justice, however, to exclude these statements as a matter of law or to rule that they are presumptively unreliable.

■ Finally, as indicated, the Court must determine whether the child's out-of-Court statements offered by Mother in this case have sufficient guarantees of trustworthiness. This inquiry requires the Court to examine the circumstances surrounding the making of the statements, without regard to the other corroborating evidence in the case. This factor is so clearly a matter for decision after consideration of all of the factual circumstances that it would be a miscarriage of justice for the Court to exclude the statements as a matter of law, solely on the basis of the pleadings. In the absence of a jury, and without the attendant risks that the verdict might be tainted by admission of hearsay, this Court will reach its own conclusions with respect to the trustworthiness of the statements after it has had the benefit of a full evidentiary hearing and a full opportunity to consider these statements and how they were elicited.

Indeed, the *Macon v. Konrad* case, upon which Father relies so heavily in arguing this motion, does not support the proposition being asserted by Father. In that case, numerous out-of-Court "hearsay" statements of the children were admitted into evidence at trial, through professional witnesses, social workers, and the mother, without any mention by the Court of a hearsay objection. While the Court ultimately held that the statements were not particularly trustworthy, and while it held that Mother had not met her burden of proving sexual abuse, nevertheless, the Judge was able to reach these conclusions on the basis of his review of the statements themselves, the totality of the circumstances surrounding how the statements were elicited, and the additional physical and behavioral evidence that was presented. Contrary to Father's arguments, the Court *did not* exclude numerous hearsay statements as a matter of law, and this Court similarly declines to do so here.

To be sure, as Mother points out in her brief, there is a formidable line of cases which serve as precedent for reliance upon F.R.E. 803(24) for the use of hearsay statements in child sexual abuse cases. Courts have allowed the use of a victim's hearsay statements where the victim is unable to testify fully about the sexual assault to which she was subject. *United States v. St. John*, 8th Cir., 851 F.2d 1096, 1098–1099 (1988); *United States v. Shaw*, 8th Cir., 824 F.2d 601, 608 (1987); *United States v. Dorian*, 8th Cir., 803 F.2d 1439 (1986); *United States v. Frazier*, E.D.Pa., 678 F.Supp. 499 (1986). In each instance, hearsay statements were admitted under F.R.E. 803(24) by the Trial Court.

■ In summary then, the Motion in Limine which seeks to exclude, as a matter of law, the out-of-Court statements made by the child victim is hereby denied. The Court rejects Father's contention that the child's statements are *per se* unreliable, even if she is found incompetent to testify at trial. Those statements will be admissible, as they have been in other child sexual abuse cases, and the reliability of the statements will be evaluated by the Court—as the trier of fact and law—to determine whether they possess sufficient guarantees of trustworthiness, and whether they render the declarant particularly worthy of belief. Moreover, once the hearsay statements are admitted into evidence, the Court, as the trier of fact, can decide what weight to give to those statements in assessing the ultimate issue in the case— whether the Father's visitation rights with his daughter should be restricted or terminated in order to afford protection to this child from future sexual abuse. To hold otherwise at this juncture would be an acknowledgement by the Family Court that it

is incapable of protecting very young victims of sexual abuse, a result which this Court simply cannot countenance.

\* \* \*

■ Father also requests that the Court allow petitioner to be examined by a psychologist. The Court has previously ruled on this issue and its reasoning is already set forth in a decision dated November 21, 1990. The Court continues to believe that the psychological stability of the mother is not in issue. Again, this request is denied.

■ With respect to the child, however, notwithstanding its prior ruling, the Court is persuaded by the fact that Mother has had the facility to utilize experts to assess her daughter's psychological state. For this reason, the Court believes that it would not be fair to preclude Father from similarly obtaining expert testimony. Accordingly, as indicated at the teleconference on March 25, 1991, Mother shall make Karisa available for psychological evaluation by an expert selected by Father.

IT IS SO ORDERED.