In Re the Matter of: DIVISION
OF FAMILY SERVICES,
Petitioner,

v.

M.D., J.E.G., Respondent.

In the Interest of: A.D. DOB: 07.04.03.

No. CS03–07134, 03–22072.

Family Court of Delaware,
Sussex County.

Date Submitted: April 27, 2004.

Date Decided: June 15, 2004.

---

Kathryn L. Welch, Esquire, the Department of Justice, Georgetown, Counsel for the State.

Margaret R. Cooper, Esquire, Fuqua and Yori, Georgetown, Counsel for M.D.

Bruce A. Rogers, Bruce A. Rogers & Associates, Georgetown, Counsel for J.G.

HENRIKSEN, J.

In a dependency/neglect action, the father of the child in interest filed a Motion *In Limine* seeking an Order barring the Court from considering any records obtained from the Delaware Criminal Justice Information System (CJIS). As noted by father, these records can be routinely accessed by the Court. According to husband's pleadings, the Court-appointed Special Advocate (CASA), as well as the Department of Justice, also have regular computer access to the records contained on CJIS. Father also noted that the CJIS records are not routinely available to his Court-appointed attorney.

Shortly after the child in this action was born he was taken into care by the Division of Family Services (DFS) on July 24, 2003 because mother was suffering from mental health issues which inhibited her ability to properly care for her baby. It was not until mother's preliminary protective hearing held August 29, 2003 that she disclosed the identity of the father. Although father appeared at the next scheduled hearing on October 31, 2003, the Court held in abeyance any hearings as to father until paternity testing was completed.

Once paternity testing was completed, the Court then held a preliminary protective hearing as to father, as well a review hearing as to mother, on February 13, 2004. At that time, father acknowledged his paternity and also waived both his preliminary protective and adjudicatory hearings, therefore acknowledging that there was a preponderance of evidence to find that the child would be dependent if placed in father's care. The basis of father's waiver was an acknowledged history with DFS concerning father's prior domestic violence and substance abuse.

Father next appeared before the Court for a dispositional hearing on March 12, 2004. At this time DFS placed into the record a case plan for father with an ultimate goal being reunification between child and father. It was at this hearing on March 12, 2004 that the Court brought to the attention of the Court room participants, including father and his attorney, the existence of father's prior criminal history found in CJIS records which had been accessed by the Court on that same date. It is the Court's recollection that none of the findings in the records found in CJIS were determinative of the issues before the Court on March 12, 2004. Instead, the Court, knowing that the State clearly had access to these records, wanted to be sure that father and his counsel were also familiar with the record.

Father's Motion *In Limine* was filed April 26, 2004.

■ In support of his Motion, father cited Title 11, Section 8610(1), which states that information obtained from CJIS can only be used where the *"public interest in dissemination or access outweighs the security and privacy interest of the person ..., and that access is germane to the mission of the agency."* Father mistakenly described the Court's review of the CJIS records in this situation to be an *"ex parte"* review. Father suggested that *"There is no conceivable way in which a party's criminal record [in a dependency action] is 'germane to the mission of the agency', citing the specific language of Section 8610(1) contained above."* Father argued that the Family Court Judge should not be permitted to *sua sponte* bring to the attention of the litigants a parent's prior criminal history as found on CJIS. Father cited the criminal case of *Getz v. State*, Del.Supr., 538 A.2d 726 (1988), in support of his argument that information of other crimes of which a party may have been convicted may not be

placed into evidence. Father also argued that the Court's alleged *ex parte* review of the CJIS records denied father of his right of confrontation guaranteed by the United States and Delaware State Constitutions. Father asserted that parties are rarely given the opportunity to rebut any evidence set forth in the criminal records found on CJIS.

DFS, in their response, stated that there are times when there are valid reasons for Court staff to review information in CJIS. One example suggested was checking for outstanding warrants against litigants. DFS then stated that it agreed with father's position, that in matters at issue in dependency/neglect hearings, records must be properly submitted to the Court pursuant to the Delaware Rules of Evidence and that access to and release of the information on CJIS is strictly governed by Delaware Title 11, Chapters 85 and 86. DFS took no position, however, in regard to father's Motion *In Limine*.

The CASA opposed father's Motion *In Limine*. The CASA argued that a party's criminal record is germane as it relates to the dependency/neglect proceedings, noting that the Court is charged by both federal and state law to consider the child's safety to be paramount and is further charged with determining what is in the child's best interest. The CASA also noted that in dependency/neglect proceedings the Family Court Judge is the trier of fact rather than a jury. As such, the Family Court Judge has the ability to weigh the probative value versus the prejudicial effect of considering a party's criminal history.

Having considered the matter, the Court stresses the importance for all parties to focus on the nature of the proceeding and the type of relief which is sought. It is critical to distinguish a criminal proceeding from a dependency/neglect proceeding. In a criminal case the focus is on the guilt or innocence of the alleged perpetrator. In a dependency/neglect proceeding, the focus is on the safety, welfare and best interests of a child.[1] Once establishing that proper focus, which in this case is on the child, there is an overriding and compelling responsibility for the Court to look out for the safety of the child and to make decisions in the child's best interest. In that respect, the public interest of protecting our children in disseminating or accessing CJIS records far outweighs the security and privacy interest of the parent whose records are being sought and disclosed.

In addition, in considering the best interests of a child, Title 13, Section 722 requires the Court to consider all relevant factors. Although the statute enumerates certain specifically identified factors, the Court is not limited to those factors. The prior criminal record of a parent or other individual who may have significant contact with a child is relevant for the Court to consider when the focus is on a child's safety and best interests. Given the availability of the CJIS information to the Court, combined with the general reliability and trustworthiness of the CJIS-provided information, it would be incongruous for the Court to overlook the readily accessible criminal information pertaining to a person who may have significant contact with a child, and, as such, possibly risk harm to a child by allowing unrestricted contact between the child and a person

---

1. See *Truman v. Watts*, 598 A.2d 713 (Del. Fam.Ct.1991), wherein Judge Ableman also noted the importance of placing the proper focus on the proceedings when considering what evidentiary rulings may need to be made concerning the hearsay statements of a two (2) year old concerning her father's conduct in a proceeding which considered the termination of father's visitation rights.

that the Court knows has a serious criminal history.

■ Again keeping the proper focus on this proceeding, that being the child, father's argument that his confrontation rights under the United States and Delaware Constitutions is misplaced. As Judge Ableman properly noted in the case of *Truman v. Watts,* 598 A.2d 713 (Del. Fam.Ct.1991), the confrontation clause only has application for a criminal defendant and does not specifically apply to civil proceedings. As such, and as noted by Judge Ableman, the admissibility of the information in these records is instead controlled by concepts of procedural due process. In emphasizing the special factors that apply in Family Court proceedings concerning children, Judge Ableman said:

> *It is peculiar to the domestic relations area that strict adherence to concepts of procedural due process must also be tempered by the need to afford protection to the child whose interests are also at stake . . .*

Judge Ableman recognized the Court's concern for making a ruling that might temporarily infringe on the parent's right versus making an opposite ruling which *". . .might greatly imperil the child."* Judge Ableman went on to say *"The Court must consider application of the Delaware Rules of Evidence, mindful of the competing interests involved. And, while the rights of a parent are a most essential consideration, the welfare of the child is always paramount."*

In *Truman,* Judge Ableman distinguished the difference between admitting evidence in a case tried before a Judge as opposed to a jury. Judge Ableman stated that, *"The Judge, unlike a jury, should be trusted to be able to evaluate the evidence accurately and properly, with due regard for the interests that are at stake."*

■ Finally, there was no violation of father's civil procedural rights of due process. Contrary to father's allegations, the Court did not consider *ex parte* the history the Court found on CJIS, nor has the Court at this point in time used those findings in making any of the determinations as to the case. This is not to say, however, that the Court might at some time consider father's criminal history as reported on CJIS to be a relevant factor to be weighed in the dependency/neglect hearings. At this particular stage, however, the Court felt it important that father's counsel be aware of father's CJIS-reported criminal record since the Court knew that the State had access to these records. As noted by father, his counsel did not have accessibility to the records on CJIS. The Court believed that it was only fair to father to inform father's counsel of the existence of father's criminal history. Also, at such time as the Court may decide that matters contained in the criminal history may have relevance in the overall decision of the Court, such use would only be appropriate after informing father of the existence of the history and allowing father the opportunity to acknowledge or deny the information, or explain the information. Thus, the Court has not, nor does it intend, to use the information *ex parte,* and father has been provided civil procedural due process. The Court also has the practice of destroying the records obtained from CJIS immediately following the hearing. If kept in the file, such records would only be maintained under seal. While the Court may allow the parties to inspect the CJIS records, the Court would not allow any party to have copies of the CJIS-obtained records.

For all of the reasons heretofore stated, father's Motion *In Limine* is hereby DENIED.